HOWARD JONES, Appellant, v. GUY A. THOMPSON, Trustee for the Missouri Pacific Railroad Company, a Corporation, Respondent, No. 41417—228 S. W. (2d) 673.

Division Two, March 13, 1950. .

Motion for Rehearing or to Transfer to Banc Overruled, April 10, 1950.

*W. T. McCaffree, Will H. Hargus, C. E. Groh* and *Alfred H. Osborne* for appellant.

*Thos. J. Cole, Ludwick Graves, Keith P. Bondurant, Arthur J. Doyle* and *H. E. Sheppard* for respondent.

ELLISON, P. J.—This case comes to the writer on re-assignment. The plaintiff-appellant, a truck ▮ driver, sustained personal injuries while endeavoring to open the door of a freight car in defendant's freight yard at Butler, Missouri, to remove a shipment of lubricating oil consigned to his employer. The door came loose from its supports and fell on his foot causing the injuries sued for. He recovered a verdict for $25,000. The respondent offered no evidence but filed an after trial motion to set aside the original judgment and for judgment in its favor notwithstanding the verdict, under Sec. 120, Civil Code, Laws Mo. 1943, p. 389, Sec. 847.120 Mo. R. S. A. The court sustained that motion on the ground that [quoting substantially] appellant's own evidence and all the evidence convicted him of contributory negligence as a matter of law; and rendered judgment accordingly, from which plaintiff appeals.

Appellant contends his evidence made a case for the jury under the doctrine of res ipsa loquitur; and that in any event the question of his contributory negligence was for the jury. The respondent maintains the doctrine of res ipsa loquitur has no application because the evidence does not show it [respondent] was in exclusive control of the freight car; and that on any view the undisputed facts show appellant knowingly entered and remained in a position of known danger, in consequence of which he cannot recover.

The case must turn largely on our conclusions from the facts. There is not much dispute on them. On arrival at Butler the freight car was set out on a north-south unloading or house track, west of and in front of a window of respondent's freight depot, where its condition was in plain view of respondent's freight agent. Appellant arrived there about noon and parked his truck near the freight car. He observed the bottom of the side door of the car [next to the depot] "was out about a foot" on the north side, meaning, as we understand, that the lower north corner thereof sloped out that much from the perpendicular side of the car. That corner was tied to the side of the car with a bailing wire which kept it from swinging further out. On the south side the car door was sealed and fastened with a hasp staple and pin which kept it from swinging out laterally on that side. It appears that the door was suspended at the top by rollers or hooks

on a horizontal iron track; and that there was a similar horizontal track under the bottom, but the bottom supports had been pushed off of the track on the north side.

Also appellant found a 2″ x 8″ timber was protruding through the side of the car at a point about one foot north of the door and about half way up the side of the car. This projecting timber kept the door from being pushed open further north. As we understand, the oil was in both cans and barrels, part destined to Warrensburg, Mo., and the 2″ x 8″'s had been used to brace the shipment in the car, but presumably through some violence in transit one of these 2″ x 8″'s had been driven partly through the east side of the car.

Appellant testified he went to the freight depot and reported to the respondent's freight agent "that the car door was in damaged condition, that is, the car showed signs of being badly handled." He asked the agent to look at it, and on being questioned as to what the agent said, the witness answered: "Mr. Butler, which is the freight agent and also the car inspector when they come in, told me that he had already checked the car." When asked what the agent further said "about whether or not you should go ahead and unload it," the witness answered: "I would say to go ahead and unload it, it was all right, that he had checked the condition of the car and it was all right to go ahead and unload it." Following that, this further question was propounded to the witness and he made this answer: "Q. When you went up there Mr. Butler told you he was familiar with the damage to the car and it was all right to go ahead and unload it? A. Yes, Sir."

Thereupon appellant went back to the car and loosened the wire at the lower north corner of the door, which would permit it to swing out further. This was necessary to open the door, and when it was done the door did swing out a little more on that side. Thereupon appellant went to the south side of the door, broke the seal, and knocked the pin out of the hasp with a hammer, thus releasing the door on that ▮ side. It then swung out at the bottom clear across, leaving a space of a foot or more between the bottom of the door and the side of the car. In other words, the door then was unsupported at the bottom and hung only from the track at the top.

Appellant then climbed through this gap into the car to remove the 2″ x 8″ timber which projected through the side of the car and prevented the door from sliding further north. He found also that one or more 2″ x 8″'s inside the car were pressing against the door, and he shifted these. Then he climbed back out to the ground under the bottom of the door, and proceeded to move the door further north with a pinch bar. But he testified he exerted this force only laterally, and did not pry up, so that the door would be lifted off the track at the top. After he had moved the door north about 6 inches in this manner he discarded the pinch bar and took hold of the regular hand-

hold near the bottom center of the door and pulled the door further north, as suspended on the top rack. After it had moved about a foot it suddenly came off of the track and fell on his foot. Then it toppled over on his whole body, pushing him to the ground. The door weighed from 300 to 600 pounds. He testified he customarily used a pinch bar to *start* the opening of a car door, and that he had used that method occasionally all his working life.

The general circumstances in the happening of the casualty, as narrated by appellant, were corroborated by two other witnesses, and likewise two witnesses who had had practical experience in unloading freight cars, testified it was customary to use a pinch bar to start the car doors to open if force was required. In fact respondent's brief concedes that appellant's brief contains, in general, a fair statement of the case—except on one point. That concerns the issue whether the local freight agent Butler was a "car inspector." As already quoted appellant testified on direct examination that Butler was "freight agent and also car inspector when they (cars) come in." But on cross-examination he said he did not know whether Butler was merely a cashier and not a car inspector; and whether he had anything to do with inspecting cars and things of that kind.

Later a witness for appellant who had worked for the respondent for 17 years as a section laborer, engine watchman, baggageman, and on a few trips as fireman, was asked if he was familiar with "the duties of the local depot agent, or employee in charge, relative to inspection of arriving freight cars and turning them over to the consignee or the party getting the freight." The court sustained respondent's objection on the ground that no such issue was *pleaded* in the petition. And it is true the petition did not so plead specifically, but it did plead that respondent was in exclusive control and management of the railroad yard in Butler, and of the box car involved; and that respondent negligently suffered and permitted the door of the car to fall from its track and injure plaintiff.

On the case as submitted under the doctrine of res ipsa loquitur, the first and fundamental question to be decided is whether the defective freight car was under the exclusive control or *right* of control of the respondent railroad when appellant sustained his injury. McCloskey v. Koplar, 329 Mo. 527, 535(6), 46 SW. (2d) 557, 559(2), 92 A. L. R. 641. If the respondent, by placing the car on its depot house track and by the conversation between its agent and the appellant, made a constructive delivery of the oil to appellant's employer, then the car was not in respondent's control, but had been turned over to the consignee for removal of the oil shipment therefrom, and respondent is not liable. On the other hand, if the respondent was still responsible for the delivery of the oil to appellant's employer, then it remained constructively in the control of the car.

Respondent stresses as precisely in point on this question Deister v. K. C. NW. Ry. Co. et al., 271 Mo. 63, 72(2), 195 SW. 499, 501. In that case the plaintiff was *shipping* a carload of cattle and was engaged in loading them into a freight car furnished by the defendants. While attempting to open the car door it fell from its fastenings and injured him, and he sued for the damages thus sustained. The decision said: "True the car was furnished by the defendant, but that is all. None of its employees were present at the time of the injury. Three men, including the plaintiff, were trying to open the door, in doing which they were having difficulty. Was it the fault of the car or of the men that the door fell? The law does not prejudge the case by presuming against either." Quoting (now) 9 Wigmore on Evidence (3rd.) § 2509, pp. 377, 380. We think this decision is not in point because, aside from everything else, it was concerned with the *loading* of a freight car, and not with the *unload*ing of a car, and the car here did not contain a carload shipment, as we shall proceed to explain.

█ The general rule, at least as to dead freight, is that the carrier is primarily bound both to load and to unload in a proper manner freight delivered to it for transportation.[1] And for breach of that duty resulting in damage it will generally be liable. But by custom or usage an exception generally obtains in the case of bulky freight in carload lots. 13 C. J. S., p. 124, § 67b; 10 C. J., p. 103, § 120; 9 Am. Jur. p. 749, § 538, p. 752, § 543. Thereunder the carrier is not required to *unload* such freight from the car, but may deliver it to a safe and convenient position for unloading at its sidetrack customarily used for such work.

And where the shipper thus voluntarily assumes the obligation of unloading, the carrier ordinarily is absolved from responsibility therefor, and will not be liable for loss or injury therefrom. Nevertheless it is an essential part of the duty of the carrier to provide safe and proper facilities for such unloading. 13 C. J. S. § 69, p. 127; 10 C. J. S., § 125, p. 106; 9 Am. Jur., § 537, p. 748. And this includes proper cars for the safe transportation of inanimate freight. 13 C. J. S., § 49, p. 95; 10 C. J., § 88, p. 85; 9 Am. Jur., § 337, p. 631, § 340, p. 634.

█ In the instant case three facts exist which were not present in the Deister case. In the first place, if appellant's testimony be believed, the car was not equipped with a safe door. In course of

[1] 13 C. J. S. p. 123, §67; 10 C. J. p. 102, §119; 9 Am. Jur. p. 746, §532; Pindell v. St. L. & H. Ry. Co., 34 Mo. App. 675; Klass Com. Co. v. Wabash Rd. Co., 80 Mo. App. 164; The Russell Grain Co. v. Wabash Rd. Co., 114 Mo. App. 488, 89 SW. 908; Yount v. Wabash Ry. Co., 136 Mo. App. 697, 700, 119 SW. 1; Carr v. St. L.-S. F. Ry. Co., 284 SW. 184, 185(2), 186(3-5); So. Advance Bag & Paper Co. v. Termn. Rd. Ass'n. (Mo. App.) 171 SW. (2d) 107, 112(2), 113(6).

transit some violent force had driven a 2″ x 8″ timber clear through the side of the car and other similar timbers against the door. In the second place the shipment here was not in a carload lot. True, there was a carload of oil in packages or cans and in barrels, but it was being forwarded to three, or at least two, consignees, one of them in a city other than Butler, namely Warrensburg. The usage rule as to carload shipments, requiring the consignee to unload the oil did not apply. It was the duty of the railroad to separate and unload the mingled shipments. 13 C. J. S., § 160, p. 314, 10 C. J. § 351, p. 248. And finally the respondent's local agent at Butler asserted jurisdiction or control over the car, said he had already checked it in its damaged condition, and directed appellant to unload it. In these circumstances we think it cannot be said as a matter of law that appellant independently had control or right of control over the car.

The next question is whether the appellant was guilty of contributory negligence as a matter of law, as the trial court held. In the first place it must be remembered that respondent's local agent informed appellant he had ''checked'' the car, and directed appellant to unload it. This of itself was enough to vouch for the safety of opening and unloading the car. We do not mean appellant could rely blindly on that assurance alone. But it has weight as evidence that reasonable minds might differ on the question. And again, the apparently hazardous part of the work had been done when appellant effected an entrance into the car under the bottom of the door and removed the obstructions to its proper lateral movement. Then appellant started it forward along the upper track with a pinch bar and followed that by taking hold of a handle near the bottom of the door which was provided for that purpose. The bottom rollers were off the bottom rail but it was supported by the hooks or rollers on the upper track and the door was about half open when it suddenly fell. We feel unable to say appellant was guilty of negligence as a matter of law. The evidence indicates such occurrences were rare, and we think the question was for a jury.

In addition to the Deister case, respondent's counsel stress Charlton v. Lovelace, 351 Mo. 364, 370-5(2), 173 SW. (2d) 13, 17-20(3-8), and Cantley v. M.-K.-T. Rd. Co., 353 Mo. 605, 613(4), 183 SW. (2d) 123, 127 (5-6). They say these decisions preclude a recovery by appellant here, because the facts affirmatively show negligence, or at least contributory negligence, on his part. We do not think so.

In the Charlton case C was drowned in the overturning of a boat operated by L on the Lake of the Ozarks. These were the only facts adduced to account for the casualty. The decision held that to make a case for the jury under the doctrine of res ipsa loquitur, the proven circumstances must warrant an inference of causative negligence on the part of L who had control of the boat, and an absence of con-

tributory negligence on the part of the deceased. The conclusion reached was that no showing had been made which would *warrant* that inference, much less compel it.

This Charlton case, as we read it, does not say the plaintiff's primary evidence in a res ipsa loquitur case must affirmatively and absolutely exclude the hypothesis of his contributory negligence, whether pleaded as a defense or not. But it does mean plaintiff's evidence must reasonably indicate the defendant's res ipsa loquitur negligence was the more probable cause of the casualty, as against other causes. That, we take it, signifies that in such cases if contributory negligence be relied on as a defense it must be pleaded or otherwise properly raised, and then becomes a question for the jury. See Cruce v. G., M. & O. Rd Co., 358 Mo. 589, 594(2), 216 SW. (2d) 78, 81(2), where the question is discussed.

In the Cantley case the plaintiff sued the defendant railroad for personal injuries sustained in the derailment of its locomotive tender during a switching movement in interstate commerce. He was foreman of the switch crew and in control of the *movement* of the equipment, but not of its inspection, operation, maintenance or repair, or of the track or roadbed. The decision concluded that plaintiff was entitled to submit his cause on common law negligence under the res ipsa loquitur doctrine, in view of Federal decisions arising under the Federal Employers' Liability Act.

For the reasons stated the judgment is reversed and the cause remanded, and the verdict in favor of plaintiff-appellant is ordered reinstated. All concur.