**WABASH RAILROAD COMPANY,**
**Appellant,**

v.

**Sylvester HARTOG, Appellee.**

**No. 15945.**

United States Court of Appeals
Eighth Circuit.

July 21, 1953.

Charles P. Lippert, St. Louis, Mo. (John L. Davidson, Jr., St. Louis, Mo., was with him on the brief), for appellant.

William R. Kirby, St. Louis, Mo. (Milton F. Napier, St. Louis, Mo., was with him on the brief), for appellee.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from a judgment entered upon a jury verdict in favor of plaintiff in a personal injury action.

In his complaint plaintiff alleged that on July 17th, 1956, defendant delivered to the Lincoln-Mercury plant in the County of St. Louis, Missouri, a certain boxcar, which it hauled over its tracks and line in Missouri, and to the Lincoln-Mercury plant to be used by said organization; that the boxcar was loaded with parts and equipment to be unloaded at said plant; that on July 17th, 1956, plaintiff, while in the employ of the Lincoln-Mercury plant, together with several other employees, did attempt to open a door on the boxcar in the usual and customary manner; and that as a direct and proximate result of the carelessness and negligence of the defendant railroad company, said door did suddenly and unexpectedly fall from the boxcar, striking plaintiff, and seriously and permanently injuring him.

Defendant, in its answer, denied that it was guilty of any careless or negligent act or omission which directly or proximately caused a railroad car door to suddenly and unexpectedly fall and strike plaintiff, causing him injuries, and alleged that if the door of the railroad car did fall upon plaintiff and if plaintiff was thereby injured, plaintiff's own negligence proximately caused or contributed to cause the injuries. Defendant's motion for directed verdict made at the close of all the evidence was overruled and the issues of negligence and contributory negligence were submitted to the jury. Verdict was returned for plaintiff in the amount of $12,500. Defendant's motion for judgment in accordance with its motion for directed verdict, or in the alternative for new trial, or in the alternative for remittitur, was overruled and judgment was entered accordingly.

The principal question presented for our determination on this appeal is whether the trial court erred in overruling defendant's motion, made at the close

of the evidence, for directed verdict for insufficiency of evidence.

It appears that on the date of his accident plaintiff was employed by the Ford Motor Company at its Lincoln-Mercury Plant in St. Louis, Missouri as a car unloader. In performing their work, two men were assigned to unload each railroad boxcar and plaintiff was working with one Floyd Yerkey. The car they were to unload was an old steel boxcar and had been furnished for loading to the Ford Motor Company at Cleveland, Ohio, by the Pennsylvania Railroad Company. Terminal Railroad Association of St. Louis delivered the car, loaded and sealed, to the defendant, as part of a 31 car cut, in its Luther Yard in North St. Louis, on July 12th, 1956. Upon receipt from Terminal on July 12th, the car was inspected by two inspectors of the defendant company who testified that they did not find any defects or note any defects about this car from their examination. From July 12th at 6:00 P.M. until July 17th at 2:00 P.M. the car was in defendant's possession in some part of its yards and it was not inspected by defendant after July 12th, 1956. It is not shown what movements the car was subjected to during the five day period after it was removed from the original 31 car cut. The car was delivered to the Ford Company Plant at 2:00 P.M. on July 17th, and plaintiff and his co-worker, Floyd Yerkey, were thereupon assigned to unload it. They broke the seal on the dockside doors and opened them, then went to the opposite side to open the doors for better ventilation. They broke the seal on that side and the door opened a few inches and then refused to move any farther. Plaintiff and Yerkey tried to open the door by themselves manually, but failed, and then summoned help from two fellow employees, Jess Gunn and Joseph Bruno. The four of them then attempted to open the door manually. When this failed they attached a chain door opener to the door and the car. The chain door opener was regulation equipment at the Ford Plant, used on boxcars when the doors would not open by hand.

The evidence was that they have trouble all the time manually opening boxcar doors and that such trouble does not mean that there is something wrong with the doors. The chain door opener consists of a hook which the men attached to a bracket underneath the door handle and a chain that ran back to a pulley and another hook which was attached to the ladder on the end of the car. When that had been done, plaintiff and Joseph Bruno were pushing on the door and working the door lever; Yerkey was at the ladder pulling up the slack in the chain of the door opener; and Jess Gunn was middle ways pulling on the chain, outward from the car. Gunn testified: "I have used these door openers many times before. I was using the opener in the customary manner." On the first pull of the chain by Gunn, the door started to move a few inches and then "sort of dropped down". Gunn hollered: "Look out!" and both Bruno and plaintiff tried to get out of the way. The door fell off the car and landed across the track on the south side and on top of plaintiff; causing his injuries, the nature and extent of which are not an issue on this appeal.

The record shows that this car had two doors on each side. The top of the door was held up against the car by means of a channel or trough which was fastened at the top of the car and fixed door guides on the top of the door that fit into and moved along this channel.

The bottom of the door had two flanges that hooked and ran underneath and behind the back edge of a channel or guide at the bottom of the boxcar. The door was prevented from leaving the channel by means of these flanges, bent like fishhooks, which extended from the bottom of the door underneath and behind the channel and then up. This channel or guide was attached to the outside of the car along the bottom edge of the boxcar itself. The door guides held the door to the boxcar and in contact

with the lower door rail or flange track which is attached to the outside of the car just below floor level and upon which the door roller operates. Each door has a lever located on the outside of the door and on the end next to the center where the doors closed together. When the door was to be moved the lever was pulled downward and operated to shift the weight of the door from the bottom track, on which it rested when stationary, to the roller. The door was then free to roll forward or backward. (Similar doors are described in Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 165 F.2d 135, 137).

Inspection of the door after it fell revealed that the bent flange or bottom door guide, which holds the door to the car, had been broken off and part of it, as well as the roller, was missing. Search failed to discover them in the vicinity of the car. The general condition of the door was bad. It had corners rusted and broken loose. The bottom structure of the door was of a springy condition, not supported by its structural members. It had been welded numerous times, some of the welding over previous welding. Examination of the outside of the door showed some sort of welding torch or heating apparatus had apparently been used around the door release lever and over a two foot square area. The top door guides were bent and it did not appear that they would run smoothly. The bottom channel was bent outward and downward slightly. There had been much welding and cutting about the car and the main sills were bent somewhat. There was no evidence of a recent break in the bottom door flange, except one bright spot about one quarter inch in diameter. The rest of the break was either rust or red paint. When the bent flange, holding the bottom of the door to the channel, was broken off, there was nothing to hold the bottom of the door to the car.

The Assistant Trainmaster, R. E. Clark, testified, for the defendant, that the car in question was received from the Terminal Railroad Company at the Wa-bash receiving yard in St. Louis, forwarded to the Wabash Berkeley yards the following morning and eventually delivered to the Ford Company. Two car inspectors, W. G. Bennett and Owen T. Parker, in the employ of defendant testified that they inspected the cut of 31 cars which included the car in question. Their inspection was made on July 12th, 1956, the day defendant received the car and some five days before it was delivered to the Ford Company. Neither of them remembered the particular car. W. G. Bennett testified: "On July 12th, 1956, I had occasion to examine a cut of cars which included Milwaukee 16001 (the car in question). * * * My inspection consisted of Mechanical inspection as to loads, safety appliances, all running gear, inside and out, other than sealed cars. * * * We made the usual and customary and ordinary inspection of this car. * * * To inspect these cars we walk along and look at the cars, that is our job, to look for defects. * * When we got to the doors of these cars we made an ordinary inspection of the doors. I call an ordinary inspection looking for something that is wrong. I assume that we looked at the door guides, but I couldn't say we stopped. I don't know. We would look at the door guides standing up unless we take exception to it. If there's something wrong we might get underneath. If there were marks along the sides of the car which might indicate that the door had scraped along the side of the car when it was being opened that would be no indication that something might be wrong with the doors. * * * If there were marks made by a torch or something of heat underneath the door, we would look to see why the heat was applied."

Owen T. Parker, defendant's inspector who made the inspection on this car with Bennett, testified: "We inspect door guides with our general inspection of the car. * * * You can inspect those door guides without bending down or getting underneath the car. * * * I don't think you could see that under-

neath part being gone without getting underneath the car, not by just our general inspection. Ordinarily there is no obstruction or anything along the right-of-way there that keeps a car inspector from going under the car and looking and seeing if the doors are in good working condition."

Appellant contends that the defective and dangerous condition of the car door, which resulted from the breaking off of its curved flange, was so latent and hidden that it was not discoverable by "reasonably careful inspection".

But the evidence shows that the defects, which left the door unfastened from the car and free to fall, were not enclosed on the inside of the sealed car nor inside of any housing that would have to be disassembled in order for them to be discovered. The broken parts were attachments to the door and on the outside of the car. The inspectors could have seen the defective condition by looking at the place where the parts were located. Inspector Parker said: "We inspect door guides with our general inspection of the car. This is part of the work we do." In answer to the question: "You can tell whether or not they [the bottom door guides] are broken off by just stooping over and looking, if you know what you are looking for, isn't that right?", Parker testified: "Yes, if you see it broke, you would know it was broke. The door guide helps hold the door in contact with the rail. It is important to know whether or not those door guides are in good shape to know whether or not the door is going to open properly or isn't going to open properly. * * * that would depend on where it was broke. If it was broken like this if you knew it I would say you would be able to see it."

■■■■ This case is governed by Missouri law and the Supreme Court of Missouri in Markley v. Kansas City Southern Ry. Co., 338 Mo. 436, 90 S.W.2d 409, 411, 412, has adopted and followed the rule announced by this Court, that:

" 'It is a carrier's duty to use ordinary care to deliver cars reasonably safe for the use of shippers and their employees while the cars are being loaded or unloaded. * * * "The carrier cannot impose this duty to furnish cars reasonably safe on the shipper. * * * If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employee to be loaded, the carrier and shipper are both liable to the injured employee; for the proximate cause of the injury is the defective car. But as between the carrier and the shipper the liability of the carrier is primary, for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe." ' St. Louis-San Francisco R. Co. v. Ewan, 8 Cir., 26 F.2d 619, 620; Waldron v. Payne, 4 Cir., 277 F. 802; Waldron v. Director General of Railroads, 4 Cir., 266 F. 196; Pennsylvania R. Co. v. Hummel, 3 Cir., 167 F. 89."

In Ward v. Kurn, Mo.App., St.L.Ct.App. 1942, 165 S.W.2d 290, 293, the court stated:

"There is no doubt of the general rule that it is the duty of a carrier, before delivering a car to a consignee whose employees are to enter it and unload it, to exercise due care to examine the car and ascertain whether it is in such state of repair that the consignee's employees, while exercising ordinary care themselves, may enter it for the purposes intended; and if the car is found not to be in such condition that the consignee's employees may enter it with reasonable safety, then it becomes the duty of the carrier to make the necessary repairs, or else to advise the consignee of the car's unsafe condition so that the consignee may warn its employees of the danger to be encountered before they enter it."

Cf., Willis v. Atchison, T. & S. F. Ry. Co., 352 Mo. 490, 178 S.W.2d 341, 344; Settle v. Baldwin, 355 Mo. 336, 196

**406**

S.W.2d 299, 303.; Stoutimore v. Atchison, T. & S. F. Ry. Co., 338 Mo. 463, 92 S.W.2d 658; Copeland v. Chicago, B. & Q. Ry. Co., 8 Cir., 293 F. 12, 15; 75 C.J.S. Railroads § 924, p. 333. .

Appellant has cited Ward v. Kurn, supra, 165 S.W.2d 290; Bradley v. Wabash Ry. Co., Mo.App., 227 S.W.2d 93; Markley v. Kansas City Southern Ry. Co., supra, 338 Mo. 436, 90 S.W.2d 409; Sykes v. St. Louis & S. F. Ry. Co., 178 Mo. 693, 77 S.W. 723; and Pass v. Gulf C. & S. F. Ry. Co., Tex.Civ.App., 83 S.W.2d 729, to support its contention here, but these cases are not helpful to appellant's position.

■ Appellant's car inspectors testified that this car was given the usual, customary and ordinary inspection and that nothing defective about this door guide was noted. However, the standard to be used and by which the defendant is to be judged is not the ordinary and customary practice or inspection of the Wabash Railroad, but what a reasonable and prudent person would be expected to exercise under the same or similar circumstances. Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W.2d 105, 107; Wilt v. Moody, Mo.1953, 254 S.W.2d 15, 19–20. In the Beahan case the court said:

"* * * Whether or not a person exercised a proper degree of care is not to be determined by reference to his own personal judgment in the situation. The law 'does not permit him to make the determination of what is, and what is not, due care under the circumstances, according to his own judgment.' 38 Am.Jur. 679, § 33. * * *"

■ The appellant's two car inspectors, who were trained and on duty to inspect for and discover defects in appellant's railroad cars, knew what they should look for in inspecting this car to ascertain whether it was in such a state of repair that the appellee's employees could use it for the purpose intended. The record shows that the defect was not a hidden defect requiring a minute inspection before discovery and we think the evidence presented here warranted the jury in finding that the appellant's inspectors did not make a reasonable and proper inspection of this car. Under the applicable Missouri law there was substantial evidence to warrant a finding of negligence on the part of the defendant, which was a proximate cause of the accident.

■ Appellant contends here, as it did before the District Court, that the evidence showed plaintiff to be guilty of negligence contributing to the accident as a matter of law. It cites Nashville, Chattanooga & St. L. Ry. Co. v. Crawford, 39 Tenn.App. 37, 281 S.W.2d 69, 74, a Tennessee case where a boxcar door fell on the plaintiff when he tried to pull it open with a tractor. Counsel for appellee, upon analysis of the facts in that case and the facts in the present case, has pointed out the following distinctions: (1) that in the cited case the railroad caused the car to be inspected when it was received at its interchange track and then it was inspected again when it was moved to the consignee's siding, whereas, in the present case the car in question had gone for five days with some moving about and no inspection; (2) in the cited case the evidence was that witnesses with long experience had never heard of a tractor being used to open a car door, whereas, in this case the undisputed proof was that the chain door opener was standard equipment with the consignee, used constantly to open car doors, and the necessity of using it to open a car door did not mean there was anything wrong with the door; (3) in the cited case the court said: "* * * the evidence does conclusively establish by plaintiff's own admission that he was guilty of dangerous conduct, the danger of which he recognized * * *.", whereas plaintiff's co-worker testified here that he had used the door opener many times before and was using it in the customary manner. We think the cited case lends no support to the defense of contributory negligence.

It appears to us that under the evidence presented here reasonable minds might differ on the question of plaintiff's negligence and it was therefore a proper question for the jury. Compare, Bradley v. Wabash Ry. Co., supra, 227 S. W.2d 93, 95–96; Rooney v. St. Louis-San Francisco Ry. Co., 220 Mo.App. 273, 286 S.W. 153, 156; Sykes v. St. Louis & S. F. Ry. Co., supra, 178 Mo. 693, 77 S. W. 723, 725; Jones v. Thompson, 360 Mo. 285, 228 S.W.2d 673, 677.

Appellant also asserts error in the instructions given by the court. The record does not show that the appellant made any requests for instructions (except for acquittal), but it took the following exception to the instructions that were given:

"Defendant excepts to the court giving the instruction to the effect that the duty of the defendant, Wabash Railroad Company, was to deliver a car in reasonably safe condition, and also containing the instruction that the particular employees of the Ford Motor Company had a right to assume that this car had been inspected by the defendant and found reasonably safe, for the reason that it enlarges upon the duty of the defendant, and improperly states the law applicable to the evidence.

"Under the evidence in this case it was improper to instruct the jury that a plaintiff, after discovery of the defective or unworkable condition of the car, still had a right to assume that it had been delivered in a reasonably safe condition."

The instructions which the court gave were drawn with care and based squarely on the Missouri decisions. The quoted exception taken by defendant appears insufficient to call the court's attention to any defect or error which it was being called upon to modify.

We find no place in the instructions where the court said, as stated in the exception, that defendant had "the duty to deliver a car in reasonably safe condition". Throughout the instructions the court limited defendant's duty to the "use of ordinary care" so that the exception as embodied in the first part of it presented nothing to review. As to the remainder of the exception, the only reference in the instruction as to what the employees "had a right to assume" is as follows:

"* * * it was the duty of the defendant, Wabash Railroad Company, to use ordinary care to deliver the said car reasonably safe for the use of said Ford Motor Company, and its employees, while the car was being unloaded, and you are further instructed that the Ford Motor Company and its employees on said occasion had a right to assume that this car furnished had been inspected by the defendant, Wabash Railroad Company, and found reasonably safe by said defendant."

The argument here on the exception which was taken to the instructions is to the effect that under Missouri law it is error to instruct that an employee working on a railroad car has a right to assume its safe condition when he knows or in the exercise of reasonable care should have known it to be in an unsafe condition. It is argued that the instruction included that error and Sykes v. St. Louis & S. F. Ry. Co., supra, 178 Mo. 693, 77 S.W. 723, and Brannock v. Elmore, 114 Mo. 55, 21 S.W. 451, are cited in support thereof. We do not think the instructions could be so interpreted, even if only the paragraph above quoted from is considered. But the effect on plaintiff's case, if he knew or in the exercise of ordinary care should have known of the dangerous condition that permitted the door to fall, was specifically and fully covered by the instructions of the court, to which no exception was taken, as follows:

"The court instructs the jury that if the plaintiff knew or by the exercise of ordinary care could have known, that the door of this railroad car had a broken bottom roller guide, if you so find, or was defective and

408

not in a proper operating condition, if you so find, and if you further find that thereafter plaintiff continued his attempt to open said door by assisting his fellow employees in their efforts to pull said door open with a chain and pulley, if you so find, and in so doing that plaintiff failed to exercise ordinary care for his own safety, if you so find, and if you further find that such acts on the part of the plaintiff directly contributed to his injury, then regardless of any other facts, your verdict should be for the defendant."

We find no error in the instructions, proceedings and judgment.

Affirmed.