**Marilyn O'DELL, Plaintiff-Appellant,**

**and**

**Kenneth Milligan, Intervenor-Appellant,**

**v.**

**Tammy Sue WHITWORTH, Defendant-Respondent.**

**No. WD 31263.**

Missouri Court of Appeals, Western District.

May 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1981.

Application to Transfer Denied Sept. 8, 1981.

Robert L. Shirkey, Kansas City, Werner A. Moentmann, Farrell Hockemeier, Richmond, for appellants.

Dick B. Dale, Jr., Richmond, Bradley, Langdon & Bradley, N.R. Bradley, Lexington, for defendant-respondent.

Before KENNEDY, P.J., and SHANGLER and SOMERVILLE, JJ.

PER CURIAM.

A wrongful death action was brought by the natural parents of an unmarried, fe-

male minor whose death occurred when she fell from the open bed of a moving pickup truck driven by defendant. The parents pleaded and submitted their case to the jury on the theory of res ipsa loquitur. The defendant pleaded and submitted contributory negligence to the jury as a defense. The jury exonerated defendant and, following an unsuccessful motion for new trial, the parents appealed.

The facts of the fatal accident essentially stand undisputed. On September 21, 1977, defendant, an unmarried, female seventeen years of age, was driving a late model, open bed, pickup truck which had stopped at a supermarket in Richmond, Missouri. The supermarket was located on Highway 13 some distance north of the intersection of Highway 13 and Lexington Street. Defendant was accompanied by three teenage companions, one of whom was the decedent who was fifteen years of age at the time. When defendant got ready to leave the supermarket one of her companions was sitting in the cab of the pickup truck, and the other two, decedent and a teenage boy, were standing in the bed of the pickup. Before defendant left the supermarket she told decedent and the teenage boy to "sit down". In compliance, decedent sat down on the right-hand side of the bed of the pickup, immediately behind the cab, and the teenage boy sat down in a similar position on the left-hand side of the pickup.

Defendant then left the supermarket and drove south on Highway 13 towards the intersection formed by Highway 13 and Lexington Street. It was daylight at the time and clear weather prevailed. Highway 13 ran straight and slightly upgrade, north to south, in the area in question. Defendant drove in the right-hand lane at a speed of approximately 30 miles per hour [1] as she approached the intersection. Highway 13, in the area in question, had an asphalt surface. The road surface was dry, smooth, and free of bumps and chuckholes. Defendant pursued a straight course and drove at a steady rate of speed. She did not vary the direction or speed of the pickup truck as it travelled south prior to the fatal accident, or, in any way, drive in an erratic manner. No other vehicles were in anyway involved.

When the pickup truck reached a point approximately 90 feet north of the intersection the teenage boy riding in back suddenly observed the decedent "flipping out backwards off the truck". After decedent fell from the pickup truck the teenage boy pounded on the cab and told defendant what had happened. Defendant then brought the pickup truck to a stop at a point north of the intersection. Decedent's body came to rest at a point approximately 90 feet north of the intersection, partially on the west edge of the travelled portion of Highway 13 and partially on the west shoulder.

Decedent sustained injuries which subsequently caused her death. Evidence of medical, hospital and funeral expenses incurred and paid by the parents in connection with decedent's death were introduced. Additionally, evidence was introduced reflecting that decedent, prior to her death, was bright, intelligent, made good grades, had no physical defects, and engaged in various sports.

The parents rely on two points on appeal, both of which involve a verdict directing instruction submitting decedent's contributory negligence: (1) that the following language in paragraph "Third" of said instruction, "such negligence of plaintiffs' decedent, Kenna Milligan, directly caused or directly contributed to cause any damage plaintiffs may have sustained", was tantamount to a converse instruction of damages and constituted error because the parents in the event of liability were entitled to recover nominal damages regardless of whether any actual pecuniary loss was shown; and (2) there was no evidence to support paragraphs "First" and "Second" of said instruction to wit, "First, Plaintiffs' daugh-

1. The posted speed limit in the area was 35 miles per hour.

ter, Kenna Milligan, was sitting on the side of the bed of the vehicle mentioned in evidence while it was being operated by defendant; and Second, plaintiffs' decedent, Kenna Milligan, was thereby negligent; . . . ."

■ Serious doubts are harbored as to whether the parents made a submissible case under the doctrine of res ipsa loquitur. As succinctly put in *Stemme v. Siedhoff*, 427 S.W.2d 461, 465 (Mo.1968), "[i]t still is the law that a plaintiff is not entitled to recover in a negligence case, including cases under res ipsa, unless the evidence justifies a finding of negligence on the part of the defendant." These doubts are heightened by a companion principle expressed in *Charlton v. Lovelace*, 351 Mo. 364, 173 S.W.2d 13, 18 (1943): "In order to make a prima facie case under the res ipsa loquitur doctrine the evidence must be such as to reasonably exclude the negligence of the injured as a contributing cause of the injury, to wit, 'that he was injured, without any fault on his part.' " However, this court expressly refrains from deciding whether the parents made a submissible case under the doctrine of res ipsa loquitur and will proceed to dispose of their appeal within the bounds of the two points they rely on.

■ Point one, that the language employed in paragraph "Third" of the contributory negligence verdict director was tantamount to a converse instruction of damages, and thereby erroneous because in the event of liability the parents were entitled to recover nominal damages even if no actual pecuniary loss was proven, is not well taken. The parents rely on cases such as *State ex rel. Kan. City Stock Yards v. Clark*, 536 S.W.2d 142, 148 (Mo.banc 1976); *Aubuchon v. LaPlant*, 435 S.W.2d 648, 652 (Mo.1968); and *Stroud v. Masek*, 262 S.W.2d 47, 51 (Mo.1953), for the basic proposition that in the event of liability they were entitled to recover at least nominal damages for the death of their minor child. Building from there, the parents argue, if correctly perceived by this court, that the complained of language in paragraph "Third" of said instruction was an abortive converse instruction of damages which permitted the jury, regardless of the issue of liability, to find in favor of the defendant, thereby doing violence to the parents' right to recover nominal damages whether or not they proved any pecuniary loss. This ingeniously conceived argument is not persuasive and fails for a number of reasons. The complained of language is not susceptible of being construed as a converse instruction of damages. Simply put, it did not purport to instruct the jury to find for defendant "if you do not believe" or "unless you believe" that the parents sustained damages. Fairly construed, it told the jury that their verdict must be for defendant if they found that decedent was guilty of negligence as submitted and that such negligence of decedent directly caused or contributed to cause any damage the parents may have sustained. So construed, the complained of language submitted causation as opposed to being a converse instruction of damages.

More than a casual reference to *Aubuchon v. LaPlant, supra*, is in order as the parents lean heavily on it to support the proposition that paragraph "Third" of the contributory negligence verdict director was an improper converse instruction of damages. Instruction No. 7 at bay in *Aubuchon* was an "if you do not believe" converse instruction (MAI 29.02(4)) which read as follows: "Your verdict must be for defendant if you do not believe plaintiff sustained damages as a direct result of the negligence of LeRoy J. LaPlant as submitted in Instruction No. 3." Although the court recognized that it would be inappropriate in a wrongful death action brought by the mother of a deceased minor child to tell the jury that their verdict must be for defendant if they did not find that plaintiff sustained damages, it rejected plaintiff-appellant's attempt to characterize Instruction No. 7 as a converse instruction of damages: "It tells the jury to find for defendant if it does not believe that plaintiff sustained

damages as a direct result of negligence of defendant as submitted in Instruction No. 3. This clearly appears to be MAI 29.02(4), which is a converse of causation." Id. 652. Paragraph "Third" of the complained of instruction in the instant case is less susceptible of being branded as a converse instruction of damages than was the instruction in *Aubuchon* for the obvious reason that it does not purport to be a converse instruction in any sense of the word. It submitted a requisite element of a contributory negligence verdict directing instruction, i.e. causation. This court is not impressed with the parents' argument that the language "to cause any damage plaintiffs may have sustained" confused the jurors and led them to believe that they were required to return a verdict for defendant if they did not believe the parents sustained damages. The clear thrust of the language employed permitted the jury to exonerate defendant if it believed that decedent's own negligence directly and proximately caused "any damage plaintiffs may have sustained." Conversely, it did not purport to authorize the jury to exonerate defendant if it did not believe the parents sustained any damages as a result of decedent's death. The language "any damage plaintiffs may have sustained" is broad and all inclusive enough to encompass presumed as well as actual damages and is not inevitably stamped as prejudicial because it was not specifically couched in terms of decedent's death.

■ This court has searched in vain, as apparently did the parties, for a pattern instruction clause in MAI precisely in point. Although it might be said that MAI 20.01 [2] would appear to suggest that it would have been better practice to have couched causation in terms of having directly caused or directly contributed to cause plaintiffs' decedent's death, failure to do so did not render the instruction prejudicially erroneous. Rule 70.02(e) provides inter alia, that "where there is no applicable MAI so that an instruction not in MAI must be given,

then such . . . instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." As held in *Huff v. Union Elec. Co.*, 598 S.W.2d 503, 516 (Mo.App.1980), "[t]he ultimate test of the propriety of a non-MAI instruction is whether it follows the substantive law, and whether a jury, composed of ordinary people, can understand it." The complained of language, submitting, as it did, causation, as opposed to the parents' contention that it had the trappings of a converse instruction of damages, did not offend either of the criteria set forth in the "ultimate" test just mentioned.

■ Point two attacks the contributory negligence verdict director on the ground that there was no evidence to support it. Guidance for resolution of this fundamental issue is provided by several rudimentary principles of tort law. By way of general definition, "[c]ontributory negligence is a want of due care on the part of a plaintiff claiming to have been damaged by the actionable negligence of another, combining and concurring with that negligence, and contributing to the damage as a proximate cause thereof, without which such damage would not have occurred." *Rader v. David*, 207 S.W.2d 519, 523 (Mo.App.1948). Concomitantly, in *Smith v. Ozark Water Mills Co.*, 215 Mo.App. 129, 238 S.W. 573, 575–76 (1922), the court observed that "[t]he law is well settled that, where a person voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of safety, and by reason of having taken the dangerous position he is injured, he can have no recovery against another who is also negligent because such person's negligence in taking the dangerous position is one of the direct and proximate causes of the injury and contributes thereto." Necessarily, decedent's minority demands that application of these fundamental principles be commensurate with the degree of care expected of minors of similar age, capacity and experience. *Warren v. Kansas City, Mo.*, 258 S.W.2d 681, 684 (Mo.1953).

---

**2.** Captioned "Verdict Directing—Wrongful Death—Single Negligent Act Submitted."

The specific act of negligence attributed to decedent was submitted to the jury via the "First" paragraph of the contributory negligence verdict director, to wit: "First, plaintiffs' daughter was sitting on the side of the bed of the vehicle mentioned in evidence while it was being operated by defendant." Paragraph "Second" required a finding by the jury that decedent "was thereby negligent". The jury was instructed as to the degree of care applicable to decedent by a separate instruction[3] defining "negligent" and "negligence" with respect to decedent as meaning "the failure to use that degree of care which an ordinarily prudent girl of the same age, capacity and experience would use under the same or similar circumstances."

The parents do not question that contributory negligence may be a proper defense in a res ipsa loquitur case. *Winston v. Kansas City Public Service Co.*, 249 S.W.2d 377, 379 (Mo.1952); and *Jones v. Thompson*, 360 Mo. 285, 228 S.W.2d 673, 677 (1950). They do, however, claim there was no evidence to support the specific ground of negligence submitted to the jury in the contributory negligence verdict director. The evidence adduced at trial, when measured by accepted legal principles previously set forth, points up the legal infirmity of their claim. The record is replete with evidence from which a jury could reasonably find that decedent assumed a precarious position when she sat on the side of the bed of the moving pickup truck, as opposed to sitting on the floor thereof, a readily accessible place of safety. The record is also replete with evidence from which the jury could reasonably find that the decedent was bright, intelligent, made good grades, had no physical defects, and engaged in various sports. In summation, there was ample evidence from which the jury could reasonably find that decedent assumed a position fraught with danger when she sat on the side of the bed of the moving pickup truck, that doing so, as gauged by the legally attributable standard of care, constituted negligence, and that such negligence directly caused or directly contributed to cause the fatal injuries which she sustained.

In essence, the parents insist that under the evidence decedent was not guilty of contributory negligence as a matter of law. This extreme position is rejected. Contributory negligence is usually a jury question, and cogent reasons for its being so find clarity of expression in *Brandt v. Thompson*, 252 S.W.2d 339, 341 (Mo.1952): "It is well settled that the court should never withdraw a question from the jury unless all reasonable men, in the honest exercise of a fair impartial judgment, would draw the same conclusion from the facts which condition the issue. This applies to questions of contributory negligence where the problem is whether reasonable minds might differ as to whether plaintiff's conduct generally conformed to that of a reasonably prudent person." As substantial evidence existed to support the contributory negligence verdict director given by the trial court, the parents' second and final point is patently fallible.

Judgment affirmed.

All concur.