**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Ronald WILLIAMS,
Defendant-Appellant.**

**No. 50913.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 30, 1986.

Motion for Rehearing and/or
Transfer Denied
Jan. 27, 1987.

Application to Transfer Denied
March 17, 1987.

Linda Vespereny, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant appeals conviction and sentence for one count of first degree robbery, § 569.020 RSMo 1978, and one count of first degree burglary, § 569.160 RSMo 1978. Defendant was found to be a persistent offender under §§ 558.016 and 557.-036.4 RSMo 1978. He was sentenced to serve concurrent terms of 20 years for each count.

The testimony of the complaining witness, Mary Gilbert, was sufficient to support a submissible case on both charges. A summary of her testimony follows. She knew defendant as "J.J." He had visited a resident in her home on prior occasions and she had seen him in the neighborhood. On July 2, 1984, at 12:30 a.m., Gilbert heard the front door bell ring as she lay in her first floor bedroom. The noise persisted, so she went to the door. Gilbert recognized the defendant. At first she refused him entry, but relented after some discussion. She left for a moment and returned, whereupon defendant pushed both doors open and entered the house. Gilbert had believed these doors to be locked. Defendant knocked Gilbert to the floor with his fist, hit her with a hard object, straddled her and beat her about the face.

Defendant, according to Gilbert, told a companion named Howard to look around Gilbert's bed and pillow for money. Gilbert never saw Howard, except for his legs, and was unable to describe him. Earlier that day, Gilbert had cashed insurance checks for other people living in her house, including her mother. She had placed $1,380 under her pillow while she slept, but later placed it in her bra. Gilbert moved the money because earlier that day while she slept a woman had knocked on her

bedroom door and entered her bedroom. Gilbert awoke and noticed that some of the money had "scooted out" from under the pillow. Gilbert thought the woman may have seen the money, so she placed it in her bra.

Howard's search was unsuccessful so J.J. then demanded money from Gilbert, which she gave him. She also told him where she kept a pistol and the men took that too. They tied Gilbert up and left.

Gilbert untied herself after the men left and called the police. She told the police what had occurred but did not tell them she knew her assailant. Ten days later, after reconsidering, Gilbert called the police and told them the identity of her assailant. Defendant claims that the new story was motivated by an argument that occurred after the robbery and at the time Gilbert called the police. The argument was about Gilbert selling alcoholic beverages from her home after store hours.

Robert Hawthorne and his wife lived in the basement of Mary Gilbert's home. On July 2, 1984, he heard a door-bell ring followed by a loud noise, "like somebody falling." He went up the stairway and saw a man whom he could not identify kneeling over Mary Gilbert. The man was cursing and threatening her. The lights were out. He heard, but did not see a second man. One of them "called the name J.J. and said something about look in the room for money or something." This testimony is inconsistent with Mary Gilbert's subsequent identification story because she claimed J.J. was her attacker and the second man conducted the search. In that event the voice would not have directed J.J. where to search for money or something.

Direct and cross-examination revealed that Gilbert had lied a number of times to the police and under oath on prior occasions. Gilbert admitted lying about the amount of money reported stolen. She said that she lied to create confusion in the papers and that her lie was justified as it was planned to "try to catch a crook." Gilbert lied to the police when they asked her to identify defendant's photo among others and she told them she did not know her assailants. Gilbert also lied when she told the police she did not know the woman who knocked on her door earlier that day.[1] She testified that she had seen the woman before, as she was a friend of an upstairs tenant. The woman's nickname was "Cookie." She refused to speak Cookie's real name. Gilbert later suspected that Cookie was behind the robbery because she saw Cookie wearing new clothes after the robbery. Cookie later told Gilbert where J.J. was living and Gilbert told the police. The refusal to fully identify the woman effectively prevented defendant from finding and questioning her so as to verify Gilbert's testimony.

Defendant appeals his convictions and sentences, claiming two points of error. First, defendant argues that the trial court erred in sustaining the state's motion in limine and thereby foreclosing cross-examination of Mary Gilbert regarding her alleged sales of liquor from her home and an argument with defendant about a sale because such evidence would show Gilbert's bias against defendant and her motive to wrongly accuse defendant of burglary and robbery. Second, defendant avers trial court error in permitting closing argument that defense had failed to establish any motive for victim Gilbert to lie about the identity of her attacker because the state knew that the defense had been precluded by its motion in limine from eliciting proof of Gilbert's bias and motive to lie stemming from her later argument with defendant about her sale of liquor.

During the second day of trial, while Gilbert was being cross-examined, the state

---

1. Near the end of Gilbert's testimony the court observed, outside of the hearing of the jury, "... if there was a provision in our law for me to act right now, I would consider stopping this whole business. I wouldn't believe that woman if she told me my mother's maiden name was Adele Elizabeth Pfeffer....the more questions that this lady's asked, the more she reveals and the more she contradicts, and if you ever wanted a classic case for justification and the need of cross-examination in criminal trials, this would stand out, you know, you could sell a million copies, get a gold label." The court also observed, "everytime this woman opens her mouth she puts her foot in it." Finally, "this woman's story this morning is essentially different from what I heard yesterday and at the time of the motions to suppress the identification."

sought and secured a motion in limine prohibiting the defense from questioning Gilbert on her alleged sale of alcohol from her home. The defense sought to question Gilbert on this matter to show two things. First, defendant argued that this evidence shows the real reason why Gilbert opened her door late at night after the liquor stores were closed rather than the fact that she knew defendant. Second, the defense wanted to question Gilbert regarding an argument that she had with defendant several weeks after the robbery about an alleged sale of watered gin. This argument coincided with the time Gilbert decided to inform the police that defendant was her assailant.

The trial court sustained the state's motion in limine with some hesitation because, while the judge did not doubt the relevancy of defense counsel's information, the court thought that the defense attorney did not have a sufficient basis for use of the impeaching information. The trial court was concerned when defense counsel revealed her main source of information as "confidential statements made to me by my client." Defendant did not plan to testify during trial. The court stated his concern that the effect of permitting defense counsel to conduct the desired cross-examination of Gilbert would be that "... in every case, whatever your defendant says would be a basis of cross-examination, without taking the stand he can get you to cast a shadow across the witness."

It is apparent that the court sustained the motion in limine in order to protect the witness from questions which implied or insinuated unlawful acts relating to after-hours sale of alcohol from her home. The court recognized that if the defendant testified then the proposed cross-examination questions would be proper because such testimony would constitute evidence relating to motive of the witness to falsely accuse the defendant. These circumstances differ from those in which the defendant attempts to insinuate by question that the witness was the guilty party rather than defendant. *See, State v. Williams*, 575 S.W.2d 838, 840 (Mo.App.1978); *State v. Woods*, 508 S.W.2d 297, 300 (Mo.App.1974). The state argues that defendant is not per-

mitted to inject suspicion, innuendo and insinuation under the guise of cross-examination, but must show, as a foundation for his questions, "some solidly based belief that the questions will elicit answers, if truthful, which will support defendant's thesis." *State v. McCon*, 645 S.W.2d 67, 68 (Mo.App.1982). However, the circumstances in the present case differ from those in *Williams, Woods*, and *McCon*. The cross-examination proposed by the defendant was not intended to connect Gilbert with the commission of the crime for which defendant was charged. The proposed examination was based entirely upon defendant's theory that two weeks after the robbery, and after the statements of Gilbert to the police that she could not identify the robber, she engaged in an argument with defendant about her sale of watered alcohol and only thereafter chose to identify the defendant. This testimony was directed entirely at the witness's motive to falsely identify defendant after she denied her ability to identify her attacker. This circumstance is sufficient to isolate this case from the usual case. There was some testimony from Gilbert supporting the defendant's version of the subsequent events. Gilbert admitted she furnished alcohol for three of her tenants because they were alcoholics. She also had admitted lying to the police about the question of her ability to identify the burglar and robber and other relevant matters. Also, the basis of the reasonable belief of defense counsel that Gilbert sold liquor after store hours from her home was first-hand knowledge of the defendant. The proposed questions were not a wild attack on the witness. Obviously, Gilbert could have denied such sales and foreclosed the issue.

■■■■ Witness prejudice in favor or against any of the parties is proper to be shown and considered to bear on the credit which should be accorded his testimony. *State v. Edwards*, 637 S.W.2d 27, 29 (Mo. 1982). This bias of a witness or his feeling towards a party are never irrelevant matters, and even when such interest or bias is admitted by the witness, the extent of it may be shown. *State v. Pigques*, 310 S.W.2d 942, 947 (Mo.1958). How far the inquiry may go, however, is left largely to

the discretion of the trial court and we will not interfere with the court's ruling absent an abuse of discretion. *State v. Edwards,* 637 S.W.2d at 29–30. Finally, we note that great latitude is allowed on cross-examination in a criminal case. *State v. Lue,* 598 S.W.2d 133, 138 (Mo. banc 1980). In this case the trial court sustained a motion in limine and completely foreclosed the subject matter. This withdrew the defendant's theory of Gilbert's motive to lie—the argument they had after the robbery about her liquor sales. Total foreclosure of cross-examination on a relevant matter is not within the court's discretion. *State v. Thompson,* 280 S.W.2d 838, 841 (Mo.1955). We conclude that an abuse of discretion has occurred in that defendant was not permitted to extract, by cross-examination, evidence showing that the witness, who admitted previous lies on the issue of identification, had a motive to falsely accuse defendant.

> It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.

*State v. Thompson,* 280 S.W.2d 838, 841 (Mo.1955).

The state also argues that defendant must prove that the error rises to the level of manifest injustice because he failed to preserve his claim by making an offer of proof during trial at the time he wished to conduct the desired cross-examination. First, the record is replete with references to the sustained motion in limine and with defense counsel's objections thereto. Argument on the motion was more extensive than usually occurs where evidence is excluded by sustaining trial objections. Further, defendant offered the trial court a second opportunity to reverse its position on state's motion in limine. This occurred midway through Gilbert's testimony. The lack of a formal "offer of proof" fails to constitute a basis to sustain a conviction when the offered testimony, as here, has been identified and its relevance is explained. *State v. Campbell,* 533 S.W.2d 671, 676 (Mo.App.1976). Second, where relevance is clear, offers of proof are not generally required when the party seeks evidence through cross-examination. *State v. Powers,* 613 S.W.2d 955, 960 (Mo.App. 1981). An offer of proof is required of a party who knows what the witness will say if the question is permitted. This seldom applies to cross-examination. Finally, an offer of proof is not required when it would serve no purpose. *Bender v. Burlington Northern R. Co.,* 654 S.W.2d 194 (Mo.App. 1983). This principle is more applicable to in limine rulings than rulings on objections to questions.

We need not address defendant's remaining point on appeal, which can be resolved upon retrial. We observe, however, that the argument that Gilbert had no proven motive to lie took advantage of the excluded evidence. This is especially true where prior convictions may have prevented defendant from testifying and Gilbert admitted a pattern of lies about the facts to law enforcement authorities. The argument is significant as an illustration that the excluded cross-examination was not merely collateral on the issue of credibility of Mary Gilbert. By allowing the argument the state was able to tacitly admit that the complaining witness was generally untruthful, but had no motive to lie about identification of defendant which thus stood apart from the lies.

We find the court was overly protective of the complaining witness who told the police she could not identify her attacker. Her own lie on the crucial issue of identification invited evidence of motive to lie or to correct a previous lie. Under these circumstances exclusion of cross-examination on the central issue requires a new trial.

Reversed and remanded.

PUDLOWSKI, P.J., and CRANDALL, J., concur.