**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Michael OLIVER, Defendant-Appellant.**

**No. 51188.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 31, 1987.

Motion for Rehearing and/or
Transfer Denied
April 29, 1987.

Application to Transfer Denied
June 16, 1987.

<hr>

Dave Hemingway, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was convicted by a jury of first degree robbery and armed criminal action and sentenced as a dangerous offender to two concurrent twenty-five year terms of imprisonment. He appeals; we affirm.

The sufficiency of the evidence is not in dispute; however, a short recitation of the facts is necessary for a resolution of defendant's points on appeal. On April 6, 1985, Terry Pruitt was working the night shift at a gas station on Dorsett Road at Interstate Highway 270 in St. Louis County. At about 3:45 a.m., defendant drove into the station, stopped his automobile near one of the gas pumps, and entered the building. At trial, Pruitt said he had never seen defendant before that night. Defendant asked Pruitt if he wanted to buy some marijuana. Pruitt testified that, because he was acquainted with a police officer and "was going to try to set up a deal where the police could see it go down at the gas station," he told defendant he was interested in making a purchase.

**562**

Defendant went back out to his car and then returned to the building. From his coveralls, he removed a light brown plastic bag which contained an article Pruitt thought might be a pistol. Defendant pointed the object at Pruitt, announced a robbery, and threatened to kill him. Defendant ordered Pruitt into an interior employee restroom at the rear of the building where defendant tied Pruitt's hands behind his back with tape. Pruitt said he then heard defendant grab a bank bag, containing about $790, which Pruitt had placed on the restroom sink earlier in his shift.

When a customer entered the building, defendant ordered Pruitt to sit on the stool and threatened to kill him if he said anything. Pruitt overheard defendant waiting on customers and then defendant reappeared to ask Pruitt how to operate the cash register and credit card machine. Pruitt said defendant became upset when he apparently could not understand Pruitt's instructions, repeated his threat to kill him if he said anything, and returned to the customers. While defendant waited on customers and continued having trouble operating the cash register and credit card machine, Pruitt was able to loosen the tape binding his wrists and cut it with the knife he had on his belt. Pruitt returned to the front, explained to the customers that "this was a robbery," told them to call the police, and began to scuffle with defendant. Defendant pulled the plastic bag out of his pocket and hit Pruitt in the head with it; the bag apparently contained a piece of metal pipe. Pruitt stabbed defendant twice in the arm with his knife. After the struggle, defendant left the building, got into his car, and drove away. Pruitt followed him out the door to the gas station lot, asked a customer to help him remember defendant's license plate number, and called police to report the robbery.

A short time later police officer George Hodak saw defendant driving on Interstate Highway 270 and placed him under arrest. Defendant and his vehicle matched the description given Hodak, and the license plate number was the same. Police found a bank bag containing $715 between the front passenger seat and the passenger door and $87 in loose currency under the driver's seat in defendant's car. Police took defendant to the gas station where Pruitt and several customers who had witnessed the robbery identified him.

Defendant's only witness was his former wife who testified defendant was at her home when a man named Terry called at approximately 2:30 a.m. on the night of the robbery and asked for defendant. According to her, defendant left her home approximately 15 to 20 minutes after the telephone call. She also testified that she had given defendant about $400 in cash earlier in the evening.

In his first point on appeal defendant alleges that:

The trial court erred in granting the state's motion in limine to prohibit evidence or reference pertaining to the subsequent robbery of the same gas station and attendant Terry Pruitt in September 1985, which evidence would have shown an unusually similar set of facts, in that both times Pruitt claimed he was alone at the station, the robber took him to the back room and tied him up but in a way that Pruitt was able to free himself. . . .

Prior to trial, the state filed a motion in limine asking the court to forbid "defendant, his attorney and/or his witnesses from mentioning at any time during the trial of this cause or attempting to elicit any reference to a robbery which occurred at the Big G Hammond Texaco service station on September 28, 1985 . . ." Following a brief hearing prior to selection of the jury, the court sustained the motion in limine. In his brief, defendant states that his counsel at the hearing on the motion in limine argued "that the evidence would support a finding that in both instances Pruitt's cash box was short and that he staged the alleged robberies to cover himself. She further argued that the evidence would go to his practices and his drug business and be relevant to his credibility." Counsel for defendant did not attempt to raise the issue of the subsequent robbery during the trial.

■ We believe the effect of a motion in limine was best described by Judge Titus in

*State v. Riggs,* 586 S.W.2d 447 (Mo.App. 1979), where he stated that such a motion is

nothing more or less than a highfalutin motion to suppress designated testimony or evidence. However, sustention of such a motion does not per se work as a permanent damnation of the evidence sought to be suppressed. Neither does sustention prevent the trial court from later changing its mind. The pretrial ruling is interlocutory only. *Additional information or trial-produced evidence may prompt the trial court to alter its pretrial ruling by admitting the previously objected-to testimony.*

*Id.* at 449 (emphasis ours). The Missouri Supreme Court followed *Riggs* on this point in *State v. Woods,* 639 S.W.2d 818, 820 (Mo.1982). *See also, Frye v. Meramec Marina, Inc.,* 673 S.W.2d 451, 454 (Mo.App. 1984); *Annin v. Bi-State Development Agency,* 657 S.W.2d 382, 385 (Mo.App. 1983); and *State ex rel. Westfall v. Gerhard,* 642 S.W.2d 679, 681 (Mo.App.1982). In order to preserve the issue of admissibility of the excluded evidence for appellate review, the proponent must present it at the appropriate time at trial. *Annin,* 657 S.W.2d at 385; *Westfall,* 642 S.W.2d at 681.[1] Defendant here did not attempt to introduce evidence of the subsequent robbery after the trial began.

█ Defendant's point also concerns the motion in limine's limitation on his cross-examination of Pruitt. We believe that the trial court cannot be indicted for error where, as here, defendant failed to attempt to raise the question while Pruitt was on the stand and thus did not give the trial court an opportunity to rule on the issue in light of the evidence and circumstances as they appeared at that time. Counsel could have specified, out of the hearing of the jury, his proposed question and the court might have allowed counsel to ask the

question if she could establish a good faith basis for the proposed cross-examination question. *See, State v. Powers,* 613 S.W.2d 955, 960 (Mo.App.1981).

The language in our recent case of *State v. Williams,* 724 S.W.2d 652 (Mo.App.1986), might appear to be contrary to our holding here and prior precedent regarding the effect of a motion in limine. In *Williams,* however, the state filed what it denominated a "motion in limine" during the course of the cross-examination of a witness; the motion was not a pretrial motion as in this case. 724 S.W.2d at 654. At issue in *Williams* was whether the defendant was required to make a formal offer of proof following the court's ruling on the state's motion; the court was not confronted with an attempt to reintroduce evidence at trial after an adverse interlocutory ruling on a pre-trial motion in limine.

█ Failure to preserve these issues notwithstanding, we fail to see any prejudice to defendant in the court's action. The trial court has broad discretion in determining questions of relevancy and admissibility and its ruling should be overturned only upon a showing of an abuse of discretion. *State v. Taylor,* 701 S.W.2d 725, 727 (Mo. banc 1985). Our review of counsel's general comments pertaining to what she proposed at the time the court ruled on the motion in limine, as well as the evidence before the court at the time Pruitt was cross-examined and at the end of defendant's case, leads us to conclude that the trial court did not abuse its discretion by prohibiting questions about the subsequent robbery. Although the record indicates defendant was freely allowed to cross-examine Pruitt about whether his "cash box was short" at the time of the April 6th robbery and about his "practices" and "drug business," there was absolutely no evidence of any cash shortage or a drug business. Defendant also had the opportunity to cross-

---

1. Defendant argues the rule requiring reintroduction of evidence at trial applies only where a defendant's motion in limine to exclude evidence is denied; that is, to preserve the issue for review, defendant must object when the state offers the evidence at trial. We see no reason to accord different treatment based on which party made the motion in limine and whether the motion was granted or denied. Like this case, both *Annin* and *Westfall* involved the granting of motions in limine to exclude evidence. In those cases, we observed that the proponents of the excluded evidence should attempt to reintroduce it at trial to preserve the issue of its admissibility. *Annin,* 657 S.W.2d at 385; *Westfall,* 642 S.W.2d at 680–81.

examine Pruitt about any relationship he had with defendant. The only evidence in the record of any prior connection between defendant and Pruitt was defendant's ex-wife's testimony that a man by the name of Terry telephoned her house and asked for defendant shortly before the crime occurred. The trial court asked defense counsel, prior to ruling on the motion in limine, whether there was any evidence of a conspiracy between defendant and Pruitt in the commission of the crime. Counsel's answer was "no." Defendant's point is without merit.

Defendant next contends that the trial court erred in admitting into evidence a glove recovered from the floor of the gas station building. Officer Don Blattner of the St. Louis County Police Department processed evidence at the gas station on the morning of the robbery. He photographed the victim, the interior of the building, and a construction worker's helmet, or hard hat, that was found at the scene. Among the items that Blattner seized were the hard hat, Pruitt's shirt, a piece of galvanized pipe, some pieces of plastic, strips of white surgical tape, some multi-colored cloth, and the glove that "was left behind" on the floor. All those items were entered into evidence. Defendant objected only to the admission of the glove, contending there was no evidence tying the glove to him and, therefore, it was not relevant.

■ Articles, instruments, and weapons that have a tendency to explain the manner in which a crime was committed that are found at or near the scene of the crime subsequent to the commission of the crime generally are admissible. *Taylor*, 701 S.W.2d at 728. The fact that the glove was not specifically connected to the defendant does not necessarily mean that its admission was erroneous. *See, State v. Hoard*, 715 S.W.2d 321, 325 (Mo.App.1986).

■ We cannot say that the admission of the glove constituted an abuse of the broad discretion granted to the trial court on questions of relevancy. *Taylor*, 701 S.W.2d at 725. However, had the glove been erroneously admitted we fail to see any prejudice to the defendant. Five witnesses placed the defendant inside the building. Although defendant did not testify, defendant's opening statement and closing argument virtually concede that defendant was inside the building. This point is ruled against defendant.

Defendant also contends that the trial court erred in failing to grant a new trial based upon the prosecutor's question to police officer Kevin Stewart about whether defendant had been charged with assault. In her cross-examination of Stewart, defense counsel asked if he had received a call at about 3:52 a.m. on the night of April 6. He responded that he had. She asked if it was a report of an attempted robbery, to which he replied "yes," and he said he put "attempted robbery" in his report. The following took place on redirect examination:

PROSECUTOR: Officer Stewart, when you booked the defendant, did you not book him for first [degree] robbery and armed criminal action and assault?

DEFENSE COUNSEL: Object to the irrelevance of that.

THE COURT: Sustained.

PROSECUTOR: I believe counsel brought up the fact that this—she thought this was sort of attempted robbery. She opened the door. I believe I can respond.

DEFENSE COUNSEL: I went into the radio call.

THE COURT: I'll sustain the objection.

■ The court sustained defense counsel's objection and defense counsel requested no further relief. It was the responsibility of defense counsel to ask for a mistrial or for other relief and, no such request having been made, we may assume the corrective action taken by the trial court in sustaining the objection was adequate. *State v. Babbitt*, 639 S.W.2d 196, 199 (Mo. App.1982). Defendant got all the relief he requested and his point is without merit.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.