**STATE of Missouri, Respondent,**

v.

**Clarence CAMPBELL, Jr., Appellant.**

**No. KCD 27671.**

Missouri Court of Appeals,
Kansas City District.

Feb. 9, 1976.

Thomas M. Larson, Public Defender, Mark D. Johnson, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

The appellant was charged by information with stealing from the person, in violation of Section 560.120 RSMo 1969. He was tried before a jury, found guilty, and sentenced to three (3) years imprisonment.

He raises only one point on appeal. He asserts, in substance, that the trial court erred in excluding the testimony of his parents with respect to the circumstances surrounding his arrest.

The state's evidence showed that on the evening of November 21, 1973, Mrs. Terry Nettles and Mr. Dallas Yearta and his wife, Ruby, drove to Boyd's Barbeque Restaurant at 55th and Prospect in Kansas City, Missouri in Mr. Yearta's pickup truck, arriving there shortly after 8:00 o'clock p. m. Mr. Yearta parked his truck in front of the restaurant. This group finished eating in about 45 minutes to an hour. While Mr. Yearta paid the check, the two ladies left the restaurant and proceeded to the truck. Mrs. Yearta entered the truck, and while Mrs. Nettles was in the process of getting into it, a young black girl scuffled with her and grabbed her purse. Mr. Yearta, coming out of the restaurant, observed this and shouted at the girl, who thereupon handed Mrs. Nettles' purse to a young black boy who was standing there. The boy promptly "broke and ran" with the purse and with Mr. Yearta in pursuit. Unable to catch the boy, Mr. Yearta returned to the restaurant and the police were called.

Mr. Yearta testified that he had seen the boy in the restaurant before this occurrence in the company of three young girls and another boy. Mrs. Yearta and Mrs. Nettles had also observed him in the restaurant and on the sidewalk outside in the company of the other boy and the girls. Mrs. Nettles positively identified the appellant as the boy to whom the girl passed the purse and who fled the scene. Mrs. Yearta, because of her position inside the truck, could not observe this.

With the presentation of the testimony of these three witnesses, the state rested its case. The defendant testified in his own behalf.

In substance, he stated that he was at Boyd's restaurant on the evening of November 21, 1973 with his girl friend and that while there, they encountered a boy and two girls who were friends or acquaintances of his girl friend, but whom he did not know. When he and his girl friend left the restaurant, these people were standing outside. He observed the scuffle and an unsuccessful attempt by one of the girls to take Mrs. Nettles' purse.

His version of the subsequent events was that Mr. Yearta then got in the truck with the two ladies and drove off; he and his girl friend started walking and the truck blocked their path at the next corner; Mr. Yearta started toward him with his hand in his pocket, and appellant ran for home. He stayed at home for a short while and then departed to attend a church party. Appellant denied any direct connection with the incident or that he was handed the purse.

On cross-examination of the appellant, by the assistant prosecutor, the following appears:

"Q. Where did you go then?

A. I went home.

Q. You didn't stay at home very long did you?

A. No, I didn't.

Q. The police came to your home?

A. Yes; they did.

Q. And you had gone?

A. Yes; I did.

Q. And that was the reason you left?

A. No; that wasn't the reason.

Q. What was the reason you left?

A. The church had a party going on at 66th and Paseo.

Q. A church party?

A. Yes.

Q. Then you went back to the barbeque place later?

A. I called the police and I was going to turn myself in on 55th and Prospect at the barbeque place.

Q. You told the police you would turn yourself in at 55th and Prospect at the barbeque place?

A. Rather my mother called them.

Q. Well, you don't know that your mother called them—

A. Yes, 'cause I was in there when she called.

Q. You went back to 55th and Prospect?

A. With my mother and father.

Q. You were arrested about midnight?

A. With my mother and father.

Q. Yes, sir. The officers told you there was a warrant for your arrest; they were going to place you under arrest for strong arm robbery, didn't they?

A. They didn't say that.

Q. *Why did you have a fight with the officers?*

A. *Because the officers pushed me and tore my coat.*

Q. *The officers told you to come with them you were under arrest and you put up a fight and resisted arrest, didn't you?*

A. *No; I didn't.*

Q. *You didn't get in a fight with them?*

A. *Yes; I got in a fight with them because he tore my coat.*

Q. Well, if you had called and were going to turn yourself in, why didn't you go home and have the officers come there; why did you go back down to 55th and Prospect?

A. Why did I?

Q. Yes.

A. Because that's where it happened—where he said it happened.

Q. Did the police tell you to stay at home and they would come by your home?

A. I don't know.

Q. You knew they were looking for you?

A. Prior to going down to 55th and at the time.

Q. And they got your name from the people in the place; right?

A. I can't tell you where they got my name, 'cause I don't know." (Emphasis supplied)

Defense counsel made no objection to any of the foregoing cross-examination, but at the close thereof he stated to the trial court (out of the hearing of the jury) that he did not understand that the state intended to go into the matter of the circumstances of appellant's arrest, but that since the matter had been gone into by the state, he wished to call the appellant's mother and father as defense witnesses. Thereupon, the following colloquy appears:

"THE COURT: If either of them were permitted to testify, what would be the nature of the evidence?

MR. JOHNSON: That they were contacted by the police; that their son came home; they talked to him; they then called the police headquarters and told them they wished to make arrangements for him to turn himself in—to be turned in and that the police officers informed them that he was not (1) wanted for arrest but only for questioning in connection with an incident that had occurred.

\* \* \* \* \* \*

THE COURT: What I'm really questioning, Mr. Johnson, is what's the relevancy?

MR. JOHNSON: I think he's opened it up, whatever relevancy he may have had and questioning, you know, about *why he resisted,* his resistence (sic) was observed and based upon the fact he was informed he was not to be arrested and questioned and the officer immediately came up and placed him under arrest.

THE COURT: Even if all of that were true, what would be the relevancy to the charge here?

MR. JOHNSON: What was the relevancy of the arrest at all?

THE COURT: There was no objection. Whether or not it would be proper argument to dwell on that, we are not deciding that at this point here.

MR. JOHNSON: Okay. Fine. There —if there was no objection; still the prosecutor opened it up and I think I have a right to pursue it.

THE COURT: Well, on that simple statement I can't agree with that unless it goes to relevant matters.

MR. JOHNSON: I assume that the prosecutor, if he offers it, *show flight, resistence* (sic) *to arrest as an indication of guilt sometimes is held to be properly admissible on the issue of guilt.* I wish to relieve any questions from the jury's mind about that.

THE COURT: If the mother were permitted to testify, what would she testify to of her own knowledge?

MR. JOHNSON: Testify to the fact that the police officer that either she or her husband had a telephone conversation with, in which an agreement was reached that her son returned home that they agreed—the agreement was made between them that, without going into the substance, that he was to meet them, to meet the police officers at 55th and Prospect where this incident occurred; that the mother and father accompanied their

son to that area and that he was—that they had been informed it was not the desire of the officers to arrest him, but only to talk to him about this incident which he might have been a witness to; that he wished to co-operate; he went down there and at that time he was—the officer asked him no questions about the incident but merely placed him under arrest.

\*   \*   \*   \*   \*   \*

THE COURT: \* \* \* I would suggest to both of you, the better way to handle it, with the understanding that counsel will abide, that the State will not refer to the circumstances of the arrest *or the alleged fight between the defendant and the police officers in closing argument.*

MR. SCHRADER: *All right.*

MR. JOHNSON: Okay. I wish the record would reflect the defendant's *offer to produce Mr. Campbell* and the substance of what I said as to what he would testify to, and the Court's suggestion that such evidence would not be relevant or material." (Emphasis supplied)

Under the facts of this case, it was error to exclude the proffered testimony of appellant's father.[1]

■ Circumstances surrounding the arrest of a defendant are generally admissible where they tend to establish an attempt by the defendant to resist, evade, escape or avoid arrest. The conduct of the accused at the time of his arrest, which shows such attempts, has long been held to be admissible as having probative value on the issue of defendant's guilt and to constitute proper evidence for a jury's consideration. *State v. Wilkins,* 100 S.W.2d 889, 895[13]

(Mo.1936), flight; *State v. Garner,* 360 Mo. 50, 226 S.W.2d 604, 609[7] (1950), flight, resisting arrest; *State v. Harris,* 325 S.W.2d 352, 358[14, 15] (Mo.App.1959), flight; *State v. Tevis,* 340 S.W.2d 415, 421[14] (Mo.App. 1960), threat to kill arresting officer; *State v. Kilgore,* 447 S.W.2d 544, 547[4] (Mo.1969), unexplained flight and resisting arrest; *State v. Woodard,* 499 S.W.2d 553, 556[5] (Mo.App.1973), flight and resisting arrest; 22A C.J.S. Criminal Law § 628, pp. 472–477.

The appellant does not (nor could he) seriously dispute either the existence of this rule in Missouri law or its application to this case. He does strenuously contend, however, that when such evidence was injected into the case by the state, the court erred in refusing to permit him to introduce the testimony of his father (who was present at the time of the arrest), for whatever value or weight the jury chose to give it, as explanatory of appellant's conduct at the time of his arrest. Appellant's position in this regard is well taken.

The general rule is thus stated at 22A C.J.S. Criminal Law § 601, pp. 404–406:

"*Explanatory evidence.* As a general rule, evidence explaining evidence previously introduced, or showing that the inference arising or sought to be drawn therefrom is not warranted, is admissible; \* \* \*. This rule is especially applicable where accused seeks to explain incriminating evidence introduced by the state, and applies even though the evidence sought to be explained was improperly admitted. Common illustrations of the rule are found in the reception of evidence \* \* \* of flight, of the commission of other offenses \* \* \*."

■ This rule is recognized in Missouri in *State v. Burns,* 322 S.W.2d 736, 742[8] (Mo.

---

1. As a part of the colloquy following the cross-examination of the appellant, it was conceded that appellant's mother had been present in the courtroom throughout the trial. The rule excluding witnesses from the courtroom had been invoked and upon proper objection her testimony might have been excluded for that reason. Appellant's mo-

tion for a new trial contained only the allegation of error as to the exclusion of the father's testimony, although appellant's point relied on in his brief asserts error as to the exclusion of the testimony of both mother and father. Reference herein will, therefore, be confined to the father's testimony.

1959), in a case where defendant's conviction for larceny was reversed and remanded on grounds not pertinent here, where the court stated that "evidence of flight to avoid arrest or prosecution is admissible * * * And the defendant has a right to 'refute any incriminating circumstances that may be shown.'"

*Burns* cites as supportive of this rule the case of *State v. Craft,* 344 Mo. 269, 126 S.W.2d 177, 180[8] (1939), wherein the court stated:

" * * * Evidence of the whereabouts of a defendant after the alleged commission of a crime is generally admissible. The defendant in such cases has the right to refute any incriminating circumstances that may be shown. * * * "

■ It is apparent that by means of the state's cross-examination of the appellant, as above set forth, it adroitly injected into the' case the fact that when the appellant, in the company of his mother and father, was arrested at the scene of the crime, to which he had returned voluntarily, that an altercation or fight ensued between him and one or more of the police officers. From such admitted fact, the jury could infer that the fight resulted from the defendant's attempt to "resist, escape, evade or avoid" arrest preparatory to flight. Under the above rule permitting explanation, he did in fact state that the fight resulted because the officers "tore my coat". However, no case has been cited nor one found by research which rules that defendant's right to explain the incidents to his arrest is confined to his own testimony where others were eye witnesses to such arrest and whose testimony would corroborate his explanation, or otherwise weaken or destroy unfavorable inferences which might be drawn. The testimony of the father, as delineated by counsel, would have corroborated the appellant's statement as to the cause of the scuffle with the police and explained the possibility of appellant's surprise, fear, shock, or other state of mind, because he was placed under arrest in spite of police assurances that they merely wished to question him. The court erred in excluding the proffered testimony of the appellant's father as to the facts surrounding the arrest.[2]

■ To avoid the clear impact of these rules and binding decisions, the state argues that the appellant's offer of proof was insufficient in that it did not specifically or definitely state the facts or reasons which would demonstrate to the trial court that such evidence would be relevant, material and admissible. Therefore, the state asserts, the trial court did not err in excluding the explanatory evidence. Neither the record before the court nor the cases cited by the state support this position.

While counsel did not make a formal offer of proof, he did clearly state to the court that the testimony was offered in explanation of the cross-examination of the appellant tending to show "flight" and "resistence (sic) to arrest" and to show "why he resisted". The explanation for appellant's conduct was apparently and obviously that the officers by earlier contact with his parents misled them (and thereby the appellant) as to the purpose of the meeting arranged with appellant at Boyd's when he was arrested, together with the asserted fact that the officers pushed him around and tore his coat. No strictly formal offer of proof was necessary under the state of this record.

In *State v. Hamilton,* 310 S.W.2d 906 (Mo.1958), defendant's conviction for sodomy was reversed and remanded for the reason that defendant was not allowed to explain why he'd used a fictitious name in registering for the hotel room in which the alleged crime was committed. In so holding, the court stated at l.c. 908[1]:

" * * * Defendant was entitled to give his reasons for registering under a

---

**2.** This would apply with equal force to the testimony of the mother, if she was not disqualified by reason of the exclusion of witness rule.

fictitious name. It was for the jury to consider the explanation in passing on the guilt or innocence of the defendant. 22 C.J.S. Criminal Law § 625e, p. 961; 22 C.J.S. Criminal Law § 601, p. 924. At pages 925 and 926 of 22 C.J.S., we note the following: 'As a general rule, evidence explaining evidence previously introduced, or showing that the inference arising or sought to be drawn therefrom is not warranted, *is admissible;* and it is sometimes so provided by statute. *This rule is especially applicable where accused seeks to explain incriminating evidence introduced by the state,* * * *.' See also *State v. Dixon,* Mo., 190 S.W. 290, loc. cit. 292; *Hartman v. United States,* 8 Cir., 215 F.2d 386, loc. cit. 394(9); *People v. Zerillo,* 36 Cal.2d 222, 223 P.2d 223, loc. cit. 228(8, 9); *Green v. State,* 258 Ala. 471, 64 So.2d 84, loc. cit. 89(12, 13). *The rule the State invokes, that is, that it was necessary for the defendant to make an offer of proof is not applicable.* That rule, as stated in 23 C.J.S. Criminal Law § 1029, p. 404, is as follows: 'Where the relevancy or admissibility of evidence offered is not apparent it may be rejected unless there is a statement of the purpose of its introduction by which the court may determine its relevancy or admissibility. Thus it is not error to exclude a question asked by a party, unless the party states the nature of the testimony that he expects to elicit thereby, and unless it further appears that such testimony is material, relevant, and responsive, or unless the question is excluded without giving the party an opportunity to state what he expects to prove. *It is unnecessary to make a formal offer of proof, however, where the question itself discloses the materiality of the evidence* * * *.' " (Emphasis supplied)

A guess will not be ventured as to what effect the proposed explanations of the circumstances surrounding the arrest and of appellant's conduct might have upon a jury, but appellant was entitled to offer such evidence, if he so desired.

The judgment is reversed and the cause remanded for a new trial.

All concur.