STATE of Missouri, Respondent,

v.

Randall E. BAKER, Appellant.

No. WD 39193.

Missouri Court of Appeals, Western District.

Nov. 24, 1987.

Nancy McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

COVINGTON, Judge.

Defendant, Randall Baker, was convicted by a jury of second degree burglary, § 569.170, RSMo 1986, and stealing, § 570.030, RSMo 1986. As a persistent offender, defendant was sentenced to concurrent terms of twelve years' imprisonment on each count. On appeal defendant alleges error in closing argument and error in admission into evidence of traffic citations made out to defendant. Judgment affirmed.

On May 22, 1986, Reese Dalton, a Grandview, Missouri, police officer, was on patrol at 3:17 a.m. when he observed a black

Dodge Charger backing up slowly and stopping in front of a Remco store at the Truman Corners shopping area. Officer Dalton was approximately three hundred fifty feet from the front of the store. Dalton watched two men exit the vehicle, open the trunk, and grab an object from the trunk. The two men ran to the well-lighted front door of the store. The man who had been driving the car, later identified by Dalton as the defendant, made a throwing motion toward the front door, then kicked in the security gates and entered the store. Dalton radioed the station and drove toward the Charger with his lights out. As he did so, he saw the driver hand an item from the store out to the passenger, William Stroer, who placed the item in the trunk of the Charger. Stroer saw the officer approaching, ran to the passenger side of the vehicle, jumped in, and hid on the front floorboard. Dalton pulled up nose to nose with the Charger and turned on all of his lights, including his headlights, spotlight, and two "takedown" lights (secondary roof-mounted spotlights). As the driver ran from the store to the car and jumped into the vehicle, Dalton saw his face during the three to four seconds it took him to run to the vehicle, and again after he jumped in the car. Dalton gave chase.

Randy Ellis, another Grandview police officer, joined the chase, and, after some time, the Charger left the road and plunged down a 25 foot embankment. Officers Dalton and Ellis saw the driver run from the scene, but did not pursue him on foot, because, according to Dalton, he already had "a pretty good jump" on them. Stroer, the passenger, was found hiding in some bushes and was subsequently arrested.

Officer Dalton described the driver of the Charger as being from six to six foot two, with medium to stocky build, brown hair, a thin dark beard and mustache, wearing dark clothing. In court, both Dalton and Ellis positively identified the defendant as the driver of the Charger.

Officer Ellis conducted an inventory of the contents of the car. He discovered in the passenger compartment a man's wallet which contained the following items: a Mis-souri certificate of title with the defendant's name on it; defendant's birth certificate; defendant's Kansas identification card; and three traffic citations from Kansas City with defendant's name on each. In the trunk of the vehicle, Officer Ellis discovered an RCA videotape recorder, later identified as having been removed from the Remco store.

Defendant's defense at trial was alibi. Mrs. Rita A. Norris, defendant's sister, testified that the defendant spent the evening of May 21, 1986, with her. According to her testimony, she and the defendant were joined by two friends, "Kim and her husband," who, at the time, lived downstairs from her. She stated that the four of them played cards from about 8:00 to 9:30 p.m., and that during that period two of the defendant's friends, one of whom she identified as "Billy," came by and borrowed the defendant's car. Mrs. Norris further testified that the defendant went to bed at about 10:00 p.m., but that she stayed up until around 2:00 a.m. She stated that when she awoke at around 6:00 a.m. on the morning of May 22nd, the defendant was still asleep and his car was still gone.

William Stroer, the passenger in the car and admitted participant in the burglary, testified for the State as a rebuttal witness. He stated that the defendant had been with him the evening of May 21st and into the morning hours of May 22nd, and that the defendant had been his accomplice in the burglary.

Among the items that the state offered into evidence were three Kansas City traffic citations made out to defendant. The citations were found in a man's wallet in the Charger. The citations were for: 1) failure to display a city sticker; 2) operating a motor vehicle without a state registration; and 3) failure to produce a valid driver's license. The court denied defendant's motion in limine to exclude the citations and admitted them over defendant's objection at trial.

During its closing argument, the state mentioned failure of the defense to produce two potential alibi witnesses named by defendant's sister in her testimony:

MS. CORRIGAN [Prosecutor]: Now, one point that's been raised by the defendant is that the defendant wasn't there, and he brought in Rita Norris, his sister, to say, well, he was with me all day long and all night and I know that because I went to bed at 2 o'clock in the morning and got up at 6:00 and he was still there. But she never told that story until today, did she, ladies and gentlemen. Wouldn't it have been nice to hear from the other people she mentioned—Kim and her husband—

After objection by defense counsel, the prosecution continued.

MS. CORRIGAN [Prosecutor]: Wouldn't it have been nice to hear from Kim and her husband, who Mrs. Norris told you was [sic] playing cards with them, wouldn't it have been nice to hear from her husband or her children who could also testify that Mr. Baker was there that night. We didn't have a chance to hear what their story would be. She was the only witness that they brought in.

Defendant's first point alleges trial court error in permitting, over defendant's objection, a portion of the state's closing argument in which the state mentioned: "Wouldn't it have been nice to hear from the other people she mentioned, Kim and her husband...." Defendant contends Kim and her husband were equally available to both the state and defendant; defendant asserts prejudice by the inference that the testimony of Kim and her husband would have been adverse to defendant.

▮ In allowing or rejecting argument of counsel, the trial court has considerable discretion and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted. *State v. Moore*, 620 S.W.2d 370, 373 (Mo. banc 1981). "The prosecuting attorney may comment on the failure of the defendant to call available witnesses who might be expected to give testimony in his favor." *Id.* Only when it is shown that the missing witness is "peculiarly available" to one party does the court consider whether the party's failure to call the witness supports the inference that the witness could have

testified adversely to that party if called. *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 649 (1942). It is not permissible to draw such a negative inference if the missing witness is equally available to both parties. *State v. Valentine*, 587 S.W.2d 859 (Mo. banc 1979); *State v. Webster*, 659 S.W.2d 286, 288 (Mo.App.1983).

▮ If the evidence shows the missing witness is unavailable to the defendant, no adverse inference can be drawn from the defendant's failure to call the witness, and it is error for the trial court to allow the state to argue the inference. *State v. Thrasher*, 654 S.W.2d 142, 145–46 (Mo.App. 1983). Here, the only evidence as to the availability of the missing alibi witnesses was the following testimony of Rita Norris, defendant's sister, on cross-examination:

Q. Now, you said that these two kids, Kim and her husband, I believe it is, they live below you?

A. They did live below me, yes.

Q. And you know where to find them?

A. They don't live there no more either.

Q. Do you have any contact with them, though?

A. No.

Since there was no evidence in the record to suggest that these witnesses were available to the defendant, there is no occasion to consider whether they were "equally available" to both parties. Under *Thrasher*, the court abused its discretion in allowing the state to comment on the failure of the defendant to call Kim and her husband as witnesses. The comment was unwarranted.

▮ Unless the abuse of discretion results in prejudice to the defendant, however, the trial court's ruling will not be disturbed. *State v. Trimble*, 638 S.W.2d 726, 734 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Fuhr*, 660 S.W.2d 443, 448 (Mo.App.1983); *State v. Smith*, 588 S.W.2d 139, 144 (Mo.App.1979); *State v. Frazier*, 522 S.W.2d 46 (Mo.App.1975). An error which in a close case might call for reversal may be disregarded as harmless when the evidence of guilt is strong. *State v. De-*

*graffenreid,* 477 S.W.2d 57, 65 (Mo. banc 1972). The judgment should not be reversed when the court is fully satisfied that the error did not contribute to the result reached in the trial court. *Frazier,* 522 S.W.2d at 48–49 (citing *State v. Bauman,* 1 S.W.2d 153, 156 (Mo.1927)).

■ The evidence in this case strongly supports the verdict. The driver of the Dodge Charger was observed at the scene of the burglary by Officer Dalton, and by both Dalton and Ellis during the chase. Both officers were able positively to identify the defendant in court as the driver of the Dodge Charger, which belonged to the defendant, and which contained his wallet and identifying papers. William Stroer, who admitted to the burglary, identified the defendant as his accomplice. Defendant's only exculpatory evidence was the uncorroborated alibi testimony of his sister.

The prosecuting attorney did not argue the negative inference that had Kim and her husband testified, their testimony would have been damaging to defendant; rather, she let the jury draw its own conclusions. When viewed in the context of the entire record, it is clear that the prosecution's brief comment directing the jury's attention to the absence of the two witnesses, did not so prejudicially "tip the scales" as to deprive defendant of a fair trial. *State v. Reid,* 629 S.W.2d 424 at 426 (Mo. App.1981). Defendant's first point of error is therefore ruled against him.

■ In his second point of error, defendant alleges that introduction of three traffic citations made out to defendant was prejudicial to defendant because allowing evidence of other crimes created the impression that defendant was a person who disregarded laws. The general rule is that evidence of other crimes is inadmissible. *State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985); *State v. Weatherspoon,* 728 S.W.2d 267, 272 (Mo.App.1987). The recognized exceptions to the general rule excluding proof of the commission of separate and distinct crimes by defendant permit evidence of other crimes which tends to establish the identity of the defendant, motive, intent, absence of mistake, accident, or common scheme or plan embracing the commission of more than one offense. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954); *State v. Cutts,* 694 S.W.2d 804, 808 (Mo. App.1985). If proof of the commission of a separate crime reasonably tends to prove a material fact in issue, such proof should not be excluded merely because it incidentally proves the defendant to be guilty of another crime. *State v. Alexander,* 693 S.W.2d 216, 220 (Mo.App.1985).

■ Defendant asserts that the evidence of the traffic citations was irrelevant because it was undisputed that defendant's black Charger was used in the burglary of the Remco store. Defendant further asserts that even if the evidence was relevant, there was other evidence linking the defendant to the vehicle. Parenthetically, city infractions do not rise to the level of crimes, at least for impeachment purposes. *State v. Brewer,* 549 S.W.2d 642, 644 (Mo. App.1977). Nevertheless, assuming that city infractions may be equated to crimes for purposes of the evidentiary objection at issue here, the traffic tickets were admissible because they linked the defendant to the vehicle used in the burglary. It was the state's burden to link the defendant to the vehicle used in the burglary. Because the state has the burden of proving defendant's guilt beyond a reasonable doubt, the state should not be unduly limited as to the manner of satisfying this quantum of proof. *State v. Kenley,* 693 S.W.2d 79, 81 (Mo. banc 1985) (*quoting State v. Clemons,* 643 S.W.2d 803 (Mo. banc 1983)). Further, the weighing of prejudice and probative value rests within the sound discretion of the trial court. *State v. Trimble, supra* at 732. There is no error in the admission of the evidence complained of.

The conviction is affirmed.

All concur.