**STATE of Missouri, Respondent,**

v.

**Harvey WHITE, Appellant.**

**No. 60066.**

Missouri Court of Appeals, Eastern District, Division Four.

June 16, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1992.

Fisher & Dolan, P.C., Colleen Dolan, St. Louis, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Defendant, Harvey White, appeals from a jury conviction of first-degree robbery in violation of § 569.020 RSMo 1986 and armed criminal action in violation of § 571.015 RSMo 1986. In accordance with the jury's recommendation, defendant was sentenced to ten years' imprisonment on the robbery conviction and three years' imprisonment on the armed criminal action conviction, sentences to run concurrently. We affirm.

The evidence at trial established the following facts. At approximately 7:30 p.m. on March 1, 1990, the victim, Clenell Johnson, left his place of employment and went to a check-cashing business located on Grand Avenue in the City of St. Louis. Shortly after cashing his paycheck, Johnson was approached by a black male later identified as Gary Powell. Using a false accent, Powell told Johnson he had just arrived from Africa and was a student at a nearby college. Powell asked Johnson if

he would assist him in locating the "Reid Hotel" and showed him a slip of paper bearing that name. When Johnson initially declined, Powell displayed what appeared to be a large roll of currency and offered to pay Johnson $100.00. Johnson refused the offer of payment but agreed to assist Powell in locating the hotel.

Johnson took Powell to a gas station and asked the attendant for directions to the "Reid Hotel." The attendant did not know the location, and further inquiries to locate the hotel's telephone listing proved fruitless. Johnson suggested a different hotel, but Powell requested that Johnson take him to the Sheraton Hotel in downtown St. Louis. As they approached the Sheraton, Powell asked Johnson to stop at a nearby Greyhound bus station so that he could retrieve some property he had left there.

When they arrived at the station, Powell asked Johnson to park in the lot and go inside with him. Powell also stated that he felt he was being watched and that someone may attempt to rob him. Powell suggested he and Johnson pool their money. Johnson refused, became suspicious, and attempted to put his money in the car's trunk. Johnson put $20.00 in the trunk and kept approximately $107.00 in his pocket.

After passersby left the area, Powell grabbed Johnson and tried to take the money from his pocket. Johnson called for help, and he and Powell struggled; a dollar bill was torn in half. Johnson stopped resisting when he saw a black male in a nearby Cadillac point a handgun in his direction. Powell fled and entered the Cadillac on the rear passenger side.

Johnson ran in front of the vehicle and recorded its license plate number. He saw the driver's face and noticed a female sitting in the front passenger seat. The Cadillac exited the parking lot, and Johnson called the police. After receiving a dispatch describing the incident, the vehicle, and several subjects, an officer immediately responded and located Johnson at the scene. Johnson informed the officer of the incident. The officer seized half of a torn dollar bill; a note bearing the name, "Reid Apartment"; and numerous worthless pieces of paper in the size and shape of paper currency. The officer also transmitted a police broadcast indicating the driver of the Cadillac was armed.

Approximately five minutes after the initial broadcast, police stopped a Cadillac matching the description and license plate number of the vehicle Johnson reported to have participated in the robbery. The vehicle was registered in defendant's name and was driven by him. A black female later identified as defendant's daughter, Patricia Morris, was in the front passenger seat; Powell was in the rear passenger seat, and his girlfriend, Dana Beasley, was in the rear seat on the driver's side. Police seized a loaded clip to a semi-automatic pistol during a pat-down search of defendant. Approximately ten to fifteen minutes after defendant's vehicle was stopped, Johnson was brought to the scene. Johnson positively identified Powell and defendant as the men who had robbed him. Defendant and Powell were arrested.

During a search of defendant's vehicle, police seized half of a torn dollar bill and a semi-automatic pistol containing one live round. The torn half bill was found in the rear passenger side of the vehicle and listed the same serial number as the half found in the victim's possession. The pistol was found wedged under the driver's seat. Defendant and Powell were transported to the police station. In a search prior to booking, police seized $80.00 from defendant's pocket and $65.00 from Powell's shoe.

At trial, defendant testified on his own behalf and presented the testimony of his daughter. Defendant admitted possession of the gun and clip and admitted being present at the scene of the crime at the time in question. However, defendant testified he was at the bus station only at the request of his daughter, who had requested he go to the station on behalf of her friend, Dana Beasley. Defendant denied pointing his gun at Johnson and testified he had not moved his gun from where he had placed it between the driver's and passenger seats.

Although defendant testified that he never witnessed a struggle between Powell and Johnson or heard Johnson's cries for help, he also testified that he saw a person running near the passenger side of his car. Defendant permitted Powell to enter the moving vehicle, although he testified that he did not know Powell prior to the incident. In explanation, defendant testified that Beasley appeared to know Powell. Defendant's daughter corroborated defendant's version of events. Defendant called Powell as a witness, but he pled the Fifth Amendment and refused to testify.

In seven points, defendant contends the trial court erred in (1) limiting defense counsel's direct and redirect examination of defendant and his daughter; (2) sustaining the state's objection to defense counsel's inquiries regarding defendant's employment; (3) permitting his co-defendant, Gary Powell, to take the witness stand and assert his Fifth Amendment privilege against self-incrimination; (4) rejecting defendant's challenge to the prosecutor's exercise of peremptory strikes; (5) failing to declare a mistrial or offer a curative instruction, *sua sponte*, in response to the state's remarks during closing argument; (6) overruling his motion to suppress identification; and (7) overruling his motion to suppress evidence.

In point one, defendant contends the trial court erred in limiting the direct and redirect examination of defendant and his daughter with respect to defendant's activities in the hours before the crime occurred. Defendant sought to elicit testimony explaining how defendant came into possession of the gun and the reason for his carrying it. The trial court found the testimony irrelevant and sustained the state's objections thereto. Defendant claims the testimony is part of the crime's *res gestae* and admissible to establish that (1) prior to the crime, defendant had gone to a friend's house to pick up a gun which he carried for the purpose of self-protection, necessitated by defendant's residing in a "high crime neighborhood"; and (2) defendant was in nearly constant possession of the gun for this purpose.

■ Initially, we consider the state's assertion that defense counsel's offers of proof were insufficient to demonstrate the testimony's admissibility. In response to questioning by defense counsel, defendant's daughter, Patricia Morris, testified that before going to the bus station, she and defendant stopped at the house of Morris' friend. The state objected to the testimony's relevancy, and the court sustained the objection. In an offer of proof, defense counsel stated:

Your Honor, the next question I'll ask the witness is whether she stopped anywhere with her father before going to Dana's house and I believe the witness will answer they went to a friend of her father's by the name of Mr. Beasley and her answer would be that he picked up his gun and I'll ask her if her father in fact picked up the gun and her answer will be yes and I'll ask her what he did with the gun and she will say he brought it back to the car.

Counsel later attempted to elicit similar testimony from defendant. Defendant testified that before going to the bus station, he and his daughter went to the home of one of his friends. The state objected to the relevancy of the questioning, and the court sustained the objection. When asked to make an offer of proof regarding defendant's testimony, defense counsel stated:

I'm asking how he came into possession of the gun that day and he would say where he picked up the gun and I would ask him what he did with the gun and he would answer he took it back in the car and I would ask him where he went and he would say he went down to the bus-station [sic].

The court again sustained the objection. Defendant went on to testify that he had possessed a gun at the scene and time of the crime. When counsel asked defendant why he had the gun in his car on that day, the state objected to the form of the question and to the relevancy of the testimony. In response to the court's request for an offer of proof, defense counsel stated:

He would explain what the gun was doing in his car that day, what the reason

will be that he picked up the gun and put it in his car and he was going to take it home but in the interim Dana asked him to go to the bus station and that would be the answer.

Counsel argued the testimony was probative "[t]o show he [defendant] did not have the gun to rob Clennell Johnson." [1]

██ When an objection to proffered evidence is sustained, the party offering the evidence must make an offer of proof demonstrating its materiality and relevancy in order to preserve the matter for appellate review. *State v. Clay*, 763 S.W.2d 265, 270 (Mo.App.1988). Although not the preferred form, an offer may be narrative as long as it is specific, does not consist merely of counsel's conclusions, and sets out facts sufficient to show the evidence's admissibility. *State v. Townsend*, 737 S.W.2d 191, 192 (Mo. banc 1987). Counsel who use the narrative form of proof run a greater risk that the court will find the offer insufficient. *Id.*

██ Here, counsel in her offers failed to assert the theory she now urges, namely, that defendant possessed the gun on the day in question for self-protection. Clearly, the first two offers concern only the manner in which defendant came into possession of the gun and, as stated, reveal nothing concerning the purported reason for such possession. Although in her third offer counsel offers to prove why the gun was in defendant's car, nowhere does she specify the alleged reason. Further, the offer references nothing concerning defendant's alleged residence in a "high crime neighborhood," nor does it contain any information concerning the frequency with which defendant carried the gun for the purpose he now alleges. Matters not mentioned in the offer of proof cannot be considered on appeal. *State v. Webb*, 737

S.W.2d 197, 199–200 (Mo.App.1987), *questioned on other grounds in State v. Hamilton*, 791 S.W.2d 789, 799 (Mo.App.1990). We find the offers conclusory and insufficient to establish the evidence's admissibility.

Defendant contends no offer of proof was required in the first instance, because the question itself disclosed the materiality of the evidence. *See State v. Campbell*, 533 S.W.2d 671, 677 (Mo.App.1976); *State v. Hamilton*, 310 S.W.2d 906, 908 (Mo. 1958). We disagree. Here, defendant admitted possession of the loaded gun and clip but denied pointing the gun at the victim and denied knowledge of the robbery. Under these circumstances, the question's relevance is not readily apparent. The circumstance of defendant's possession is unlike the inherently incriminating circumstances sought to be explained in *Campbell* and *Hamilton:* flight from police and the use of a fictitious name. *Campbell*, 533 S.W.2d at 676; *Hamilton*, 310 S.W.2d at 908. Further, nothing indicates the state took advantage of the excluded evidence by suggesting that the jury draw an adverse inference from defendant's mere possession of the gun. *See State v. Williams*, 724 S.W.2d 652, 656 (Mo.App.1986). The excluded testimony was merely collateral on the issue of defendant's credibility. *See id.* [2]

██ We do not determine the relevancy of the excluded testimony. However, even if the trial court abused its discretion in excluding it as irrelevant, we will not disturb its ruling unless the abuse resulted in prejudice to defendant. *State v. Baker*, 741 S.W.2d 63, 66 (Mo.App.1987). "An error which in a close case might call for reversal may be disregarded as harmless when the evidence of guilt is strong." *Id.*

---

1. After two more unsuccessful attempts to question defendant concerning why he possessed the gun at the time of the crime, defense counsel commented, "We're left to speculate why you had a gun in your car at this point." Counsel was admonished by the judge, and the jury was instructed to disregard the remark. In her closing argument, counsel further commented to the jury, "Why did he [defendant] have a gun in his car. He was unable to answer that question

and that's something that has been left unanswered...."

2. As noted in footnote 1, counsel's remark during the attempted questioning and during closing argument clearly suggested to the jury that there was a legitimate reason for defendant's possession of the gun which he was not permitted to explain.

The evidence here strongly supports the verdict. When viewed in context of the entire record, the exclusion of the testimony, even if erroneous, did not deprive defendant of a fair trial. Point one is denied.

In point two, defendant alleges the trial court erred in sustaining the state's objection to defense counsel's inquiries regarding defendant's employment and source of income. During direct examination of defendant, defense counsel asked whether defendant was employed. The state objected, arguing that defendant's employment was irrelevant to the issues in the case. Upon request by the court, defense counsel stated she intended to ask defendant:

> Are you now employed and he will answer that he's retired from the 7-Up Corporation and he's on a pension. The next question, the other issue if I may be allowed to continue, Your Honor, the character of the witness is also in question and the credibility of the witness is also in question and it's also relevant this man's been employed at the same job since 1950 until retiring in 1988. I think the character and credibility of the witness is also an issue for the jury to consider.

The court sustained the state's objection to the testimony. Questioning resumed, and defendant testified that he was employed on the date of the crime but had retired by the time of trial. The state made a second objection, which the court sustained.

On appeal, defendant has abandoned his argument that the excluded testimony was relevant to the issue of his character and credibility. He argues only that the testimony was relevant to the issue of his motive, or lack thereof, to commit the robbery.

As with the offers of proof at issue in point one, we find defendant's offer insufficient to demonstrate the excluded testimony's materiality and relevancy. *See Clay,* 763 S.W.2d at 270. Defendant argues the testimony would have shown he did not need money and that, therefore, he had no motive to commit the robbery. However, the offer of proof states only that defendant was "on a pension" and wholly fails to indicate the amount of income he may have been receiving. We agree with the state's argument that "[w]ithout essential facts of this kind, it is impossible to evaluate the relevance of the excluded testimony even if one accepts appellant's reasoning that a defendant's income would in itself be relevant to show a lack of motive to rob...." Defendant's offer of proof was insufficient to demonstrate the admissibility of the excluded testimony. Point denied.

In his third point, defendant contends the trial court abused its discretion in failing to remove co-defendant Powell from the witness stand after it became clear that Powell would invoke his Fifth Amendment privilege against self-incrimination and refuse to answer any further questions. Defendant further contends the trial court abused its discretion in failing to give curative instructions after the state allegedly made a conscious attempt to build its case out of the inferences arising from Powell's assertion of the privilege. The state argues defendant has waived this claim and is not entitled to plain error review.

After the close of the state's case and outside the presence of the jury, defense counsel informed the court she was endorsing Powell as a witness, based on an interview in which Powell provided information counsel deemed favorable to defendant. At that time, counsel indicated her understanding that Powell was being advised by his attorney to invoke the Fifth Amendment privilege against self-incrimination. A hearing was conducted outside the jury's presence, and, aside from stating his name, Powell refused to answer any questions propounded by the state or defense counsel.

Despite this refusal, defense counsel requested that the defense be permitted to call Powell as a witness in the presence of the jury. The state vigorously objected and argued that it is improper for the court to permit a witness to testify when the witness has indicated an intention to plead the Fifth Amendment if called. The court overruled the objection, rejected the case law provided by the state, and asserted it

had discretion whether to permit Powell to testify.

The proceedings returned to open court, and defense counsel questioned Powell. After stating his name, Powell refused to answer defense counsel's questions regarding whether he knew defendant, whether he recalled the evening of the crime, whether he was in the company of defendant that evening, and whether on that date he saw defendant point a gun at the victim. At that point, the state objected to any further questioning. Out of the hearing of the jury, the court considered and rejected the case law presented by the state in support of its argument that calling Powell to the stand was improper. The proceedings again returned to open court, and the following occurred:

Q. [By Defense Counsel]. Mr. Powell, did you speak to me last evening in the office of the Circuit Attorney, and present at that time was Ms. Turner [the prosecutor] and your attorney Mr. Cooper?

A. I was advised not to answer any questions under oath.

Q. In the interview last evening, did you tell me you did not know Harvey White and had never met him before the evening of March 1, 1990 and at no time did he hold a gun to Clenell Johnson?

A. I was advised not to answer any questions.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. [By the State]. Mr. Powell, is it a fact that on February 13, 1991 you pled guilty to this Count of Robbery and Armed Criminal Action in this case, along with other cases?

A. I've been advised not to answer your questions.

Q. It is you [sic] at that time, the facts of the case were read by me and I indicated the facts it happened [sic] and Mr. Harvey White, after you arrived at the bus station, tried to pull a scam, in fact hold a gun and point it in the direction of you and Mr. Clenell Johnson and you proceeded to get in his car at that time and left the scene, the location?

A. I've been advised not to answer any questions.

Defense counsel contends the court should have removed Powell from the witness stand after counsel's direct examination revealed that Powell intended to invoke the Fifth Amendment privilege.[3] Apparently, counsel contends the entire direct examination was proper, even though Powell asserted the privilege in response to each of counsel's questions.

We review defendant's claim only for plain error, because at trial he made no objection to the cross-examination on the grounds now alleged and failed to include the claim of error in his motion for new trial.[4] *State v. Schlup*, 785 S.W.2d 796, 800 (Mo.App.1990); Rule 30.20. We find no plain error in the court's refusal to deny the state an opportunity to cross-examine Powell. Further, we find no manifest injustice in the trial court's failure to give a curative instruction, *sua sponte*, after the prosecutor's alleged attempt to build its case out of inferences arising from Powell's assertion of the testimonial privilege. Defense counsel's questions clearly implied that Powell had exonerated defendant in prior statements to counsel. The prosecutor's questions were an attempt to dispel those inferences and did not result in manifest injustice to defendant. There is no

---

**3.** In the point relied on of his original and reply briefs, defendant contends the court committed prejudicial error in allowing Powell to testify when "Powell and his attorney unequivocally stated to the court in chambers that Powell would invoke his Fifth Amendment right and not answer any questions." However, in the argument portions of the briefs, counsel contends the court did not abuse its discretion in calling Powell in the first instance and limits his claim of error to the trial court's failure to act after defense counsel's direct examination of Powell. The question of whether the court abused its discretion in permitting Powell to testify in the first instance is not now before us.

**4.** We are mindful of the state's contention that we should not review defendant's claim, even for plain error, because defendant invited the error of which he now complains. Nevertheless, we undertake review in light of the constitutional concerns implicated.

evidence of prosecutorial misconduct. Point denied.

■ In point four, defendant alleges the trial court erred in overruling his challenge, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the state's peremptory strikes of two black venirepersons.

Initially, we consider the state's contention that defendant's motion was untimely. Defendant made his motion after both the state and defense had exercised their peremptory strikes and a jury had been selected. The trial court ruled the motion untimely but proceeded to consider it. On the record, defense counsel explained that both parties had made their peremptory strikes at the close of the proceedings, after the judge had retired to his chambers. According to counsel, she understood that at that time, the court was not in session and proceedings would reopen the next morning. Counsel informed the court of the motion immediately after the proceedings returned to open court the next day.

■ The appropriate time to raise a *Batson* motion is after the state has made, and before the defendant makes, peremptory strikes. *State v. English*, 795 S.W.2d 610, 612 (Mo.App.1990). Further, a *Batson* motion is waived unless timely raised. *Id.* Here, however, defendant made his motion before the jury panel was discharged and before the jury was sworn. Moreover, the record indicates that court had adjourned before either party had made peremptory strikes. Under these circumstances, defendant has not waived his right to challenge the jury panel on *Batson* grounds.

■ In reviewing defendant's claim, we review the trial court's substantive findings. *State v. Hunter*, 802 S.W.2d 201, 203 (Mo.App.1991). A reviewing court will set aside the trial court's determination of whether the state discriminated in the exercise of its peremptory challenges only if the findings are clearly erroneous. *Id.*

Here, the final jury panel consisted of eleven blacks and sixteen whites. The state used four of its six peremptory strikes against black venirepersons and excused one black alternate.[5] Six of the twelve persons who served on the jury are black. Further, defendant, the prosecutor, the victim, and all the state's witnesses are black. At the hearing on defendant's motion, defense counsel alleged she had made a *prima facie* case of racial discrimination by showing the number of strikes the state had exercised against black venirepersons. With no prompting or inquiry from the court, the prosecutor then volunteered her reasons for the strikes. The court found there was no discrimination and adopted the state's neutral explanations; the court also found that defendant had failed to make a *prima facie* case.

We need not consider the trial court's ruling that defendant failed to make a *prima facie* case. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, —— U.S. ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 405 (1991). Therefore, we determine only whether the trial court clearly erred in accepting the prosecutor's explanations for her strikes and in finding there was no racial discrimination.

The state contends *Hernandez* conflicts with *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), which directs trial courts "to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory chal-

---

5. The record indicates defendant used all seven of his peremptory strikes against white venirepersons. Nevertheless, we decline the state's invitation to determine whether and under what circumstances criminal defendants may be subjected to the constraints of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. The state makes its challenge to defendant's strikes for the first time on appeal, and we have before us no record on which to consider its claim. We note that the United States Supreme Court has granted certiorari to consider this issue. *Georgia v. McCollum*, —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991).

lenges." *Antwine,* 743 S.W.2d at 64. However, we read *Antwine* to require such a consideration only when it is necessary to determine whether a *prima facie* case does in fact exist; such a determination is irrelevant when the state volunteers reasons for exercising its strikes and the trial court has ruled on the ultimate issue of intentional discrimination. *Hernandez,* —— U.S. ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 405. In making its argument, the state is actually attacking *Antwine*'s reordering of the proof required in *Batson.*[6] However, we need not address the issue of whether and under what circumstances prosecutorial explanations for strikes are *required* in response to a *Batson* challenge, since the prosecutor here volunteered her explanations with no prompting or inquiry by the trial court.

We turn to a consideration of the state's explanations for its strikes. Defendant contends the state struck two black venirepersons who were similarly situated to two white venirepersons who were not struck. We find no clear error in the trial court's acceptance of the state's explanations.

At the hearing on defendant's motion, the prosecutor stated she struck black venireperson Clemons because (1) he twice indicated that despite the reasonable doubt standard, he would require the state to prove the elements of the offense "100 percent"; and (2) he knew venireperson Scott and she felt they may influence each other's decision making. The prosecutor further stated she struck black venireperson Scott because (1) he knew venireperson Clemons; (2) he "had too many close people who had been through the system"; and (3)

he had a daughter who had been raped, and the rapist was not sentenced to serve time in jail. Scott indicated he was dissatisfied with the judicial system as a result of the rape trial's outcome.

▆▆▆ No relevant factor indicates discriminatory intent in the state's exercise of its peremptory strikes. First, it is unclear what advantage the prosecutor would gain by discriminatorily removing blacks from the jury where defendant, the victim, and all of the state's witnesses are black. *State v. Williams,* 784 S.W.2d 309, 313 (Mo.App.1990). Further, the fact that the state did not strike some blacks undercuts any inference of impermissible discrimination. *State v. Griffin,* 756 S.W.2d 475, 482 (Mo. banc 1988), *cert denied,* 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). Lastly, the trial court had an opportunity to observe the prosecutor's statements and questions on voir dire and specifically found nothing to suggest discrimination. A reviewing court should ordinarily afford great deference to such a finding, since the finding will largely turn on an evaluation of credibility. *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21.

Furthermore, the black venirepersons struck were not "similarly situated" to the white venirepersons who remained on the panel. The black venirepersons lived next door to one another, while the white venirepersons simply knew one another. Moreover, the prosecutor in striking the black venirepersons relied on other factors aside from their acquaintanceship; such factors did not exist with respect to the white venirepersons the prosecutor retained.

---

**6.** In *Batson,* the United States Supreme Court held that a defendant alleging discriminatory selection of a venire must first "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to the inference of discriminatory purpose." *Batson,* 476 U.S. at 93–94, 106 S.Ct. at 1721, 90 L.Ed.2d at 86. The Court further held that *"[o]nce the defendant makes a prima facie showing,* the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88 (emphasis added). In *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755,

100 L.Ed.2d 217 (1988), the Missouri Supreme Court directed courts to consider the state's explanations in determining whether defendant had established a *prima facie* case. *Antwine,* 743 S.W.2d at 64. In so doing, it raised questions of (1) whether defendant is still required to establish a *prima facie* case before the state is obligated to offer explanations for its strikes; and (2) what constitutes a *prima facie* showing. *See, e.g., State v. Robinson,* 811 S.W.2d 460, 462–63 (Mo.App.1991); *State v. Hudson,* 815 S.W.2d 430, 433 (Mo.App.1991); *State v. Roper,* Nos. 57805 and 59750, slip. op. at 4, 1992 WL 3235 (Mo.App. Jan. 14, 1992).

The trial court did not err in finding the prosecutor did not discriminate in the exercise of her peremptory strikes. Point four is denied.

■ Next, defendant alleges the trial court erred in failing to give a curative instruction and failing to declare a mistrial after the prosecutor in closing argument implied that defendant's lack of prior convictions did not necessarily show he had never committed a crime.

At trial, defendant testified he had never been convicted of a crime. During defense counsel's closing argument, she twice mentioned that defendant had never been convicted; she further argued it made no sense that defendant, at age 57, would go to a bus station with his daughter and "pull his first armed robbery." During the state's rebuttal, the following exchange occurred:

MS. TURNER [Prosecutor]: Ladies and Gentlemen, I have a lot of things that I want to say to you. I think what I should do now most importantly is answer for you some of the allegations made by Ms. Dolan [Defense Counsel]. Ms. Dolan stood up here and told you why would Harvey White, this 57 year old man decide at 57, when he's never been in trouble before, to do his first robbery. Ladies and Gentlemen, maybe he's never been convicted before now—

MS. DOLAN: I'll object at this point and I ask to approach the side bar. Ms. Turner is getting into things that are not the scope of evidence.

THE COURT: The objection is sustained.

MS. TURNER: Just because it's the first time, I want to tell you does not mean he never did nothing [sic] else before. Perhaps he did not get caught.

MS. DOLAN: He's never been arrested before in his life.

MS. TURNER: That evidence is not permissible for the jury to hear.

MS. DOLAN: Objection.

THE COURT: Sustained.

MS. TURNER: You're right, you did not hear any evidence about that and the reason you did not hear it, hear any evidence—

MS. DOLAN: I'll object—

MS. TURNER: The state can't bring it to you.

At that point, the court called a bench conference and admonished the prosecutor that "what you're about to say is very dangerous." The prosecutor argued her comments were in retaliation for defense counsel's statement that defendant had never been arrested. The court refused to permit the retaliation and stated it was improper to "plant any seeds about this man along the lines you're trying to argue, that this man wasn't caught before...." The prosecutor abandoned her line of questioning.

As noted, defense counsel made three objections to the prosecutor's comments, all of which were sustained.[7] At no time did counsel request a curative instruction or mistrial. "Contemporaneous objection and proper request for relief are predicates to appellate review of matters arising from closing argument of counsel." *State v. Garner*, 760 S.W.2d 893, 901 (Mo.App. 1988). We assume the court's corrective action was adequate. *State v. Corpier*, 793 S.W.2d 430, 444 (Mo.App.1990). Defendant received the relief he requested and cannot now claim error. *Id.*

Defendant does not request plain error review pursuant to Rule 30.20. Nevertheless, we have reviewed the record with respect to this point and find that the prosecutor's comments, even if erroneous, had no "decisive effect" on the jury. *See State v. Sidebottom*, 753 S.W.2d 915, 920 (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). Point denied.

■ In point six, defendant alleges the trial court erred in overruling his motion to suppress identification and permitting the victim's identification testimony at trial.

---

**7.** The record does not reflect a formal sustention of defense counsel's third objection; however, immediately after the objection, the court admonished the prosecutor to abandon her line of questioning.

Defendant contends the identification was an unreliable product of an impermissibly suggestive show-up that was not justified by exigent circumstances.

The trial court denied defendant's motion after an evidentiary hearing and overruled his objections to the victim's identification testimony at trial. Despite his motion to suppress and objections to the victim's testimony, defendant at trial admitted his presence at the time and scene of the crime and admitted seeing a man running along the passenger side of his car at that time and location. The victim testified to the same set of facts. In his own defense, defendant contended only that he did not point his gun in the direction of the victim and Powell, did not witness a struggle between Powell and the victim, and did not know Powell before Powell entered his car that night.

"[A]ny possible error in identification testimony is cured when the defendant's own testimony removes the issue of identification for the trial." *State v. Grey*, 525 S.W.2d 367, 370 (Mo.App.1975). Here, defendant's trial admissions did just that. The claim of error is meritless. Point denied.

In his seventh and final point, defendant challenges the trial court's failure to suppress the physical evidence seized from his person and vehicle. Defendant filed a pretrial motion to suppress which the trial court denied after an evidentiary hearing. Defendant contends the arrest was without probable cause and argues that the warrantless search and seizure was unlawful.

 First, defendant deems the stopping of his vehicle an "arrest" and alleges the stop was not supported by probable cause. However, pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may stop a vehicle for investigative purposes even though no probable cause to arrest exists. *State v. McCabe*, 708 S.W.2d 288, 290 (Mo. App.1986). The stop is justified when police have a "reasonable suspicion that criminal activity is afoot," judged by whether a person of reasonable caution would believe, from the facts available to the officer at the moment of seizure, that the action taken was appropriate. *Id.*, quoting *State v. Lasley*, 583 S.W.2d 511, 518 (Mo. banc 1979). Here, police stopped defendant's vehicle because it matched the description and license plate number of an automobile reported to have been used in an armed robbery that had occurred approximately ten minutes earlier. Under these circumstances, we find that a person of reasonable caution would believe the stop justified. *See McCabe*, 708 S.W.2d at 290.

 After stopping defendant's vehicle, police conducted a pat-down search of defendant; a loaded clip to a semi-automatic weapon was discovered in the pocket of defendant's trousers. This investigatory search was permissible if reasonably related to the circumstances warranting the stop. *State v. Fernandez*, 691 S.W.2d 267, 269 (Mo. banc 1985). Here, the police had been advised that defendant was armed. This circumstances justified the scope of the search. *State v. Johnson*, 702 S.W.2d 65, 72 (Mo. banc 1985). Further, the seizure of the clip was proper in light of the justification for the search: the protection of the police and the public. *See State v. West*, 766 S.W.2d 103, 107 (Mo.App.1989). Nothing in the record indicates the police did more than what was minimally necessary to discover whether defendant was armed. *See id.* at 107–08.

 After the pat-down search of defendant, the victim was brought to the scene. The victim positively identified defendant and Powell as the men who had robbed him. Defendant and Powell were placed under arrest, and police conducted a search of defendant's vehicle. The search yielded a loaded semi-automatic pistol under the driver's seat and a torn half of a dollar bill in the rear passenger seat. The half bill matched the serial number of the half found in the victim's possession.

"Probable cause to arrest exists when the arresting officer's knowledge of the facts and circumstances is sufficient to warrant a prudent person's belief that the suspect is committing or has committed an offense." *McCabe*, 708 S.W.2d at 790.

Here, the victim's identification of defendant and his vehicle, together with the facts known to the police before the stop, were sufficient to warrant a reasonable belief that defendant had committed an offense. Defendant's arrest was lawful.

 Further, we find the search of defendant's vehicle proper as an incident to his lawful arrest. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981). Because the officers suspected defendant had participated in an armed robbery, it was reasonable for them to think that evidence of the crime would be in the automobile where it was accessible to defendant. *State v. Johnson,* 768 S.W.2d 662, 663 (Mo.App.1989). Defendant argues that when the car was searched, he was "under police custody and there was no possibility he could have reached any areas of the car's interior to threaten either evidence or the officer's safety." However, defendant's reasoning "would render the search incident doctrine a mere exercise in semantics" and "has been squarely rejected by the United States Supreme Court." *State v. Greene,* 785 S.W.2d 574, 577 (Mo.App.1990), *citing Belton,* 453 U.S. at 459, 101 S.Ct. at 2863, 69 L.Ed.2d at 774; *see also State v. Hutchinson,* 796 S.W.2d 100, 106 (Mo.App.1990). The gun and half bill were not improperly seized, and the trial court did not err in refusing to suppress them.[8]

On appeal, defendant does not specifically challenge the admissibility of the currency police seized from defendant and Powell upon their booking at the police station, although he did raise a general objection to the admissibility in his motion to suppress. Regardless, searches and seizures conducted when the arrestee is at the place of detention are proper if they could have been conducted at the time and place of arrest. *McCabe,* 708 S.W.2d at 291. Further, it is entirely proper for police to remove and inventory property found in the possession of an arrested person. *State v. Twitty,* 793 S.W.2d 561, 565 (Mo. App.1990). Accordingly, we find the search of defendant at the police station valid both as incident to a lawful arrest and as an inventory procedure. *McCabe,* 708 S.W.2d at 291.[9] The currency seized from defendant was properly admitted. Point seven is denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and KAROHL, J., concur.

---

8. Because of our disposition of the case, we need not consider whether the search and seizure was permissible pursuant to the "automobile exception" to the warrant requirement. *See State v. Ritter,* 809 S.W.2d 175 (Mo.App.1991).

9. We note that defendant has no standing to challenge the police's search of Powell and no standing to protest the introduction of any physical evidence secured pursuant thereto. *State v. McCabe,* 708 S.W.2d 288, 291 (Mo.App.1986).